Harold **HEGWOOD**, Executor of the Estate of Avis Hegwood, Deceased, Appellant,

v.

**GENERAL MOTORS CORPORATION**, Goodyear Tire & Rubber Company, and McEleney Motors, Inc., Appellees.

No. 62241.

Supreme Court of Iowa.

Dec. 19, 1979.

M. Gene Blackburn of Murray & Blackburn, P. C., Fort Dodge, for appellant.

H. Richard Smith of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for appellees Goodyear Tire & Rubber Co. and McEleney Motors, Inc.

Macauley Carter, Jr. of Haupert, Robertson & Johnson, Marshalltown, for appellee General Motors Corp.

HARRIS, Justice.

This products liability suit is the result of a one-car accident in which plaintiff's decedent was killed. Plaintiff's theory is that the defendants should be held responsible for supplying a car capable of speeds in excess of 123 miles per hour while, without adequate warning, equipping it with tires which had been tested only for speeds up to 85 miles per hour. We affirm because at trial the plaintiff lost on the facts. There was substantial evidence to support the finding that no failure of the defendants was a proximate cause of the accident.

The accident happened at about 1:30 a. m. November 24, 1974, on a blacktop road in Greene County. The decedent was driving the 1974 Pontiac Grand Prix automobile she had purchased the previous April. The car was manufactured by defendant General Motors Corporation and was equipped with steel-belted radial tires manufactured by the defendant Goodyear Tire & Rubber Company.

The car had been driven between 12,000 and 17,000 miles. The tires had a life expectancy of 40,000 miles. Except for defendants' claim that the tires were underinflated there is nothing to indicate they were neglected, misused, or abused prior to the accident.

During the evening of the accident the decedent spent several hours at a tavern in Farnhamville, Iowa, in the company of her son and two of his friends. According to her plans the decedent's younger brother was to take her son and his friends home sometime during the evening hours. But the brother failed to appear so, at approximately 12:30 to 1:00 a. m., the decedent felt compelled to take them home herself. She was angry and upset about this.

She left the tavern at about 1:00 a. m. Tom Stevens was in the front seat beside her. Decedent's son Charles was in the rear seat behind Stevens. Randy Tasler was in the rear seat behind the decedent. For a description of what followed we adopt the following from the findings of fact of the trial court:

Mrs. Hegwood rapidly accelerated the automobile to a speed considerably in excess of the posted speed limit. Prior to entering Highway 144 she may have at one point been traveling between 110 and 120 miles per hour. Apparently she had slowed down or stopped to enter Highway 144. Highway 144 is a two-lane blacktop. In the areas material to this litigation, it was reasonably level and in good condition.

Upon entering Highway 144, Mrs. Hegwood again rapidly accelerated the automobile. The written and oral argument of plaintiff's counsel made during trial and in closing argument was that the evidence would show that the speed was somewhere between 110 and 120 miles per hour at the time the accident occurred. Her son estimates the speed at approximately 110 miles per hour shortly before the accident occurred, when he claims that he went to sleep and did not recall anything until after the accident occurred. Randy Tasler stated that he saw the speedometer go past 120 miles per hour.

At least one of the passengers asked her to slow down. She disregarded this request. Randy Tasler heard a hissing noise which he believed was coming from a rear tire. He had time to comment on this. The accident then occurred.

The automobile traveled almost 800 feet from the point where the marks on the highway indicate the tire had blown out to where it finally came to rest. It traveled about 660 feet in an upright position in a relatively straight direction down the center of the highway. It then began to roll and rolled over approximately six times. It then caught fire and burned.

All the passengers were thrown out of the automobile. Mrs. Hegwood died of a broken neck. Her body lay beyond where the car came to rest.

Plaintiff and defendants produced expert witnesses who stated their views on the

cause of the accident. They all agreed that the accident occurred when a tire blew out and that the blowout resulted at least in part from high speed and underinflation of the tires. Abandoning any claim for negligence, plaintiff pursued the theory of strict liability espoused in *LeBouef v. Goodyear Tire & Rubber Co.*, 451 F.Supp. 253 (W.D. La.1978).

The matter was tried to the court sitting without a jury. In its ruling the trial court uniformly found and ruled adversely to the plaintiff. The plaintiff points to various holdings and assigns a number of them as error. We reach only one of them because that one is conclusive. The trial court held: "The proximate cause of the accident and Mrs. Hegwood's death was Mrs. Hegwood's abuse or misuse of the tires beyond what one reasonably expects a consumer to abuse or misuse a product."

We can set aside from our consideration the trial court finding that there was no defect in the design or manufacture of the product. Even if there had been such a defect, "[i]n addition, plaintiff has the burden of proving his injury or damage *was proximately caused* by a defect in design or manufacture of the product which existed at the time the product left the control of the seller or manufacturer." *Aller v. Rodgers Machinery Mfg. Co., Inc.*, 268 N.W.2d 830, 834 (Iowa 1978). (Emphasis added.) The policy for the requirement of showing proximate cause has been explained this way:

> Just as liability for negligence has tended to be restricted within narrower boundaries than when intentional misconduct is involved, there is a visible tendency to restrict it still further when there is not even negligence. The intentional wrongdoer is commonly held liable for consequences extending beyond the scope of the foreseeable risk he creates, and many courts have carried negligence liability beyond the risk to some extent. But where there is neither intentional harm nor negligence, the line is generally drawn at the limits of the risk, or even within it. This limitation has been ex-

pressed by saying that the defendant's duty to insure safety extends only to certain consequences. More commonly, it is said that the defendant's conduct is not the "proximate cause" of the damage. But ordinarily in such cases no question of causation is involved, and the limitation is one of the policy underlying liability.

W. Prosser, Torts § 79 at 517 (4th ed. 1971).

There is some overkill in the trial court's finding on proximate cause resulting from the use of the article "the" rather than the required "a" in connection with proximate cause. It was not necessary for the plaintiff to establish that any defect was "the" proximate cause. The element is satisfied upon showing the defect to be "a" proximate cause.

By the same token it was not necessary, in order to deny recovery, for the trial court to find what *the* proximate cause actually was. Recovery cannot be had unless some defect was *a* proximate cause of the injury. It is suggested that this confusion betrays a misapplication of law which impels us to set aside the trial court's finding on proximate cause.

We think, however, there was substantial evidence to support the trial court's finding that *the* proximate cause was the decedent's misuse of the product. Even though the trial court's finding went further than required it nevertheless bars plaintiff's recovery. If, indeed, plaintiff's misuse of the product was *the* proximate cause of the accident it follows that no defects in the product could also be. We made the same point in a different context in *Gunnison v. Torrey*, 216 N.W.2d 361, 365–66 (Iowa 1974), and in *Gregory v. Suhr*, 224 Iowa 954, 956, 277 N.W. 721, 722 (1938).

The trial court was permitted, though not required, to accept the testimony of Robert M. Hill, who specializes in determining the causes of tire failure. It was his expert opinion that no tire he knows of would have withstood the road hazard impact to which he believes the Hegwood tire was subjected. He said the tire had no defect in workmanship or materials and that the tires met all

industry and governmental standards. Rather, he believes the "tire failed . . because. it . . . struck something which cut and broke through the steel belts and the carcass and allowed the air to escape."

The trial court was justified on this record in its finding on proximate cause. When there is an adverse finding on the pivotal issue of proximate cause a tort plaintiff's chances for recovery generally go awry. Such a determination is fatal to the plaintiff's cause except in those rare cases in which proximate cause has been established as a matter of law. *See* Iowa R.App.P. 14(f)(10). This is not one of those rare cases.

Because there was sufficient evidence to support the trial court's finding on proximate cause it is unnecessary and becomes inappropriate for us to reach the many other issues in dispute.

AFFIRMED.

All Justices concur except UHLENHOPP, ALLBEE and McGIVERIN, JJ., who take no part.