James H. BANDSTRA, Jayne B. Bandstra and Joshua J. Bandstra, A Minor Child, by James H. Bandstra, A Next Friend, Plaintiffs-Appellees,

v.

INTERNATIONAL HARVESTER COMPANY, Defendant-Appellant,

and

Hines-Westburg Implement Co.; Madison Silo Company, Inc.; Throckmorton Services, Inc.; John H. Throckmorton, Sr.; Gilbert Bandstra and Jerry Bandstra, Defendants.

No. 84–403.

Court of Appeals of Iowa.

Feb. 26, 1985.

Burns H. Davison II of Jones, Hoffman & Davison, Des Moines, for defendant-appellant.

Gerald R. Ralph, Des Moines, Robert J. Kromminga, Des Moines, and Clark L. Holmes and Joseph G. Bertogli of Piazza, Holmes & Berry, Des Moines, for plaintiffs-appellees.

Heard by OXBERGER, C.J., and DONIELSON and SNELL, JJ.

DONIELSON, Judge.

Defendant manufacturer appeals from judgment for the plaintiffs in a negligence action, asserting: (1) that its motion for a directed verdict and for judgment notwithstanding the verdict should have been allowed; (2) that evidence was insufficient to support submitting the case to the jury; (3) that the jury was improperly permitted to consider evidence of a post-occurrence change in design; (4) that the foundation was insufficient to permit testimony from plaintiffs' expert witness; and (5) that the size of the damage award was excessive. We affirm.

In 1977, James Bandstra was involved in a farming accident which is the basis for this action. Bandstra fell more than thirty feet from an unguarded silo ladder manufactured by Madison Silo Company and landed in the hopper opening of an International Harvester forage blower. He sustained severe injuries which resulted in partial amputation of both legs.

Plaintiff sued Madison Silo, International Harvester, and his father and brother, who employed him at the time of the accident. His ex-wife and minor child were also named as plaintiffs. He originally alleged both negligence and strict products liability; however, the strict products liability claim was withdrawn at the conclusion of the evidence.

The jury returned a verdict finding that plaintiffs' total damages were $3,400,000. Plaintiff's ex-wife was awarded $125,000 and their minor child received $25,000. The jury concluded that Madison Silo, In-

ternational Harvester, and the plaintiff each were guilty of negligence and apportioned liability as follows: James's father and brother—zero; James—10 percent; Madison Silo—60 percent; and International Harvester—30 percent. International Harvester has appealed from this result.

## I.

The defendant's first claim is that the trial court erred in overruling its motion for a directed verdict and motion for judgment notwithstanding the verdict. As a separate argument, defendant claims there was insufficient evidence to submit the case to the jury. These two arguments are essentially the same and we will consider them together for purposes of this appeal.

■ In considering the propriety of a motion for directed verdict, we view the evidence in a light most favorable to the party against whom the motion was made. Iowa R.App.P. 14(f)(2). Generally, questions of negligence and proximate cause are for the jury; it is only in exceptional cases that they can be decided as a matter of law. Iowa R.App.P. 14(f)(10). Even when facts are undisputed, if reasonable minds might draw different inferences from them, a jury question is engendered. Iowa R.App.P. 14(f)(17).

Upon review of the record, we conclude that the case was properly submitted to the jury. Three theories of negligence were submitted to the jury concerning International Harvester's liability:

1. Failure to design and provide a guard over the auger;
2. Failure to design and provide an auger control lever which would disengage the auger when moved into a downward position and/or place the lever in such a way as to disengage the auger when struck by a falling object;
3. Failure to warn of the alleged condition of the forage blower.

With respect to each of these theories, defendant argues that plaintiff did not establish a breach of duty and that there is no evidence that the claimed defects proximately caused the plaintiff's injuries.

### ■ A. Breach of Duty.

When a manufacturer is sued in connection with an alleged defect in a machine the negligence alleged must be reasonably foreseeable and must be in connection with such a part of the machine as pertains to its purpose. *Davis v. Coats Company*, 255 Iowa 13, 119 N.W.2d 198, 201 (1963). A company is not required to safeguard against occurrences that cannot be reasonably expected or contemplated as likely to occur. *Id.*

■ The record contains evidence that it is reasonably foreseeable that a person would be climbing above the auger while it was operating. As such, International Harvester is required to take reasonable precautionary measures to guard against probable injury.

According to plaintiffs' expert witness, Ken Olson, one safety device which should have been used was shielding over the auger. Olson testified that such shielding was available and was the "state of the art." He also testified that the designer of the International Harvester forage blower was aware shielding was available in order to make the auger safer. In support of this statement, plaintiffs offered into evidence eight of the original patents for the forage blower, one of which called for shielding over the auger.

Defendant points to evidence in the record which would support a contrary conclusion. One of defendant's expert witnesses testified that shielding would not be able to withstand the impact of a 170-pound man falling from a height of 30 to 40 feet. Defendant also argues that none of the other forage blowers in evidence had the type of safety shield that Mr. Olson claimed was a state of the art. One expert witness testified that such guards could not be used since they would block the flow of cut silage into the hopper.

We need not consider the merits of defendant's factual claims. It is obvious that there is conflicting evidence in the record

concerning the feasibility of a safety shield. This type of factual dispute should be submitted to a jury. It is not the type of question which could be determined as a matter of law. Viewing the evidence in a light most favorable to the plaintiffs, we believe a jury question was engendered. Reasonable minds could differ as to whether International Harvester had a duty to put a safety shield over the auger.

■ We also believe evidence would support a conclusion that defendant had a duty to change the direction of the auger control lever so that it would disengage the auger when moved in a downward position. Ken Olson testified that ASAE safety standard 335.1 requires that the control lever be moved downward to disengage the auger. Evidence also reveals that such a change was feasible; several other forage blowers had control levers which conformed to the safety standards. Finally, testimony reveals that if the lever conformed to the safety standards, someone falling into the hopper would have disengaged the auger. Thus, while defendant may dispute the reliability of the evidence, the fact remains that there was evidence in the record to support plaintiffs' claim that a duty was breached.

■ There was also evidence to support the claim that defendant had a duty to warn the plaintiff of the potential danger of falling into the auger.

■ Iowa has adopted the Restatement (Second) of Torts § 388 (1956) which provides:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be *endangered by its probable use*, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

The issue of whether a warning is required is determined by standards of reasonable care. *Henkel v. R and S Bottling Co.*, 323 N.W.2d 185, 188 (Iowa 1982).

In the case before this court, the forage blower had two warning labels. One provided:

1. Keep all shields in place.
2. Stop machine to adjust and oil.
3. When mechanism becomes clogged, shut off engine before cleaning.
4. Keep hands, feet, clothing away from all moving parts.
5. Keep off implements unless seat or platform is provided for riding purposes. Keep others off.

The other label provided, "Keep hands and feet out of hopper when machine is connected to a power source." Mr. Olson testified that the warning labels did not adequately warn against the danger of climbing a ladder over the auger. While the operator's manual had such a warning, Olson stated that "the state of the art" required that such a warning appear on the actual machinery. He testified on direct examination that the danger was not open and obvious, and that International Harvester was clearly aware of the potential danger, having referred to it in the owner's manual.

Such evidence is sufficient to engender a jury question concerning the duty to warn. While defendant cites to conflicting evidence, we are required at this point to view the evidence in a light most favorable to the plaintiffs. In doing so, we cannot say the trial court erred in submitting the question to the jury. Reasonable minds could differ as to whether there was a duty to warn.

■ **B. Proximate Cause.** Our conclusion that there was sufficient evidence

of negligence to submit to the jury disposes of only part of defendant's argument. The separate issue of proximate cause must also have substantial support in the record.

> The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

*McCleeary v. Wirtz*, 222 N.W.2d 409, 413 (Iowa 1974). It is not necessary for the plaintiffs to establish that the particular defect was "the" proximate cause. Rather, "the element is satisfied upon showing the defect to be 'a' proximate cause." *Hedgwood v. General Motors Corp.*, 286 N.W.2d 29, 31 (Iowa 1979). The causal connection may be established by circumstantial evidence if it is sufficient to make the theory asserted reasonably probable, not merely possible. *Northwestern National Insurance v. Raid Quarries Corp.*, 249 N.W.2d 640, 643 (Iowa 1977). "It is generally for the trier of fact to say whether circumstantial evidence meets this test." *Id.*

 Applying these principles to the evidence in this case, we conclude that there was sufficient evidence to engender a jury question on all theories of liability. Plaintiffs' expert witness specifically testified that shielding over the auger would protect someone from falling into it. He stated that other forage blowers contained shields which would serve this purpose. While other testimony in the record would indicate to the contrary, this merely creates a factual dispute which should properly be considered by the jury.

 There is also sufficient evidence concerning the direction of the auger control lever. Ken Olson testified that if the lever moved in conformity to safety standards, someone falling into the hopper and hitting the control lever would have disengaged the auger. Defendant correctly points out that Ken Olson never testified that James Bandstra would necessarily have hit the control lever. However, one witness, Gilbert Bandstra, testified that the control lever was "right on top of the auger and the blower" and James would have hit the lever as he fell into the blower. He further testified that he believed if the control lever had disengaged the auger when moved in a downward position, "Jim would still have his legs today."

 Finally, with respect to the lack of warning, we believe circumstantial evidence is sufficient to establish a causal connection. Defendant argues that the danger was open and obvious to the plaintiff. Even if plaintiff knew or may have known of the danger, it was for the jury to say whether he appreciated the danger sufficiently to obviate the necessity of the warning.

We therefore conclude that there was sufficient evidence on defendant's duty and proximate cause to submit the question to the jury.

## II.

 Defendant's second assignment of error is that the trial court erred in allowing evidence of International Harvester's post-occurrence change in the design of the auger control lever.

Rule 407 of the Iowa Rules of Evidence provides:

> *Subsequent Remedial Measures.* When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered in connection with a claim based on strict liability in tort or breach of warranty or for another purpose, such as proving ownership, control, feasibility of precautionary measures, if controverted, or impeachment.

In 1977, International Harvester redesigned the auger control lever so that it disengaged the auger when it was moved downward. Evidence of this change was

allowed at trial in connection with plaintiffs' strict liability claim. However, the strict liability claim was dismissed at the close of the evidence and counsel for the defendant requested that the evidence be striken from the jury's consideration. The trial court refused to strike the evidence and over defendant's objection submitted the following instruction to the jury:

There has been received into the evidence in this case testimony and other evidence that at a time after the manufacture of the International Harvester Model 56 forage blower present in the Bandstra farm that International Harvester Company revised the forage blower and changed the manner in which the auger clutch control operated and the shape and location of the operating lever.

Under the laws of the State of Iowa you may consider such subsequent change on questions that you may have of feasibility of such a device or change, but you may not consider this or any other subsequent change as any admission or confession by International Harvester Company of any existence of a defective or improper machine as originally manufactured prior to such change.

We believe that such an instruction was proper and find no reversible error. It was proper for the jury to consider the subsequent remedial change for purposes of feasibility. Defendant's claim that the issue of feasibility was uncontroverted is unfounded. As plaintiffs point out, they had the burden to establish defendant breached a duty to exercise ordinary care in the design, manufacture and installation of the forage blower. In order to accomplish this, it was necessary to show that it was feasible to design an auger control lever which disengaged the auger when moved in a downward direction. There is no indication that defendant stipulated to the feasibility of such a change. Furthermore, the court's instruction specifically informed the jury that evidence should not be used to establish negligence, thereby protecting against potential prejudice.

Accordingly, we affirm the trial court's decision in this respect. The evidence was properly admitted pursuant to Iowa Rule of Evidence 407.

## III.

■ International Harvester also argues that Ken Olson, plaintiffs' expert witness, was not qualified to testify. We believe, however, that a proper foundation was laid.

This state adheres to a liberal policy concerning the admissibility of opinion testimony. Such evidence will be admitted if it is of a nature that will aid the jury and is based upon special training, experience, or knowledge with respect to an issue in controversy. *Haumersen v. Ford Motor Co.*, 257 N.W.2d 7, 11 (Iowa 1977). The admissibility of opinion testimony, lay or expert, has not been distilled into distinct rules. Rather, it rests in the sound discretion of the trial court, and the trial court's determination will not be disturbed on appeal unless manifest abuse of that discretion causing prejudice to the complaining party is shown. *Ganrud v. Smith*, 206 N.W.2d 311, 314 (Iowa 1973).

*State ex rel. Leas in re O'Neal*, 303 N.W.2d 414, 420 (Iowa 1981).

The record reveals that Mr. Olson has worked in the area of industrial safety for several years and taught safety administration at Drake University. He served for two and one-half years as the director of the State of Iowa Bureau of Labor Enforcement for Occupational Safety and Health. During this time, he established a safety consulting program and an accident investigation program for major disasters and explosions. Olson then went into private practice as a safety consultant. As a safety consultant, he was hired by the Federal Bureau of Labor to write and design a training program to be used in the field of major disasters and accident investigation. Olson testified that through this position he became familiar with standards that related to the farming industry. He is a mem-

ber of several professional societies and is a registered safety engineer in California.

In addition to these qualifications, it is also apparent from the record that a sufficient factual foundation existed to support his opinions. Olson visited the Bandstra farm and examined the forage blower. He reviewed several materials in preparation for this case, including patents and literature from other manufacturers of forage blowers.

■ The record establishes that Ken Olson had special knowledge and expertise that would aid a jury. As with any opinion testimony, the trier of fact can consider credibility and is at liberty to reject the testimony. *Haumersen v. Ford Motor Co.*, 257 N.W.2d 7, 11 (Iowa 1977). Therefore, it is only in clear cases of abuse that the admission of such evidence is found prejudicial. We cannot say that the trial court clearly abused its discretion in allowing the expert testimony.

Defendant also argues that Olson's testimony is tantamount to the practice of engineering and thus violates Iowa Code section 114.1, since Olson is not licensed to practice in Iowa. We find this claim to be without merit.

■ The lack of a license is not a bar to accepting a person as a witness. *Ganrud v. Smith*, 206 N.W.2d 311, 315 (Iowa 1973). Furthermore, as the trial court indicated, the purpose of section 114 of the Iowa Code is to protect the public from persons who undertake to represent themselves as professional engineers and to offer services as such. Olson evaluated certain facts and information solely for the purpose of testifying. We do not believe this should be characterized as offering services. His activities were not such that they affected the public that the statutory provision is designed to protect.

Finding no error, we affirm the trial court's decision to admit Ken Olson's testimony.

## IV.

■ The defendant's final assignment of error is that the award of damages was excessive. We cannot agree.

[W]e do not disturb jury verdicts pertaining to damages unless they are flagrantly excessive or inadequate, so out of reason so as to shock the conscience, the result of passion or prejudice, or lacking in evidentiary support.

*Harsha v. State Savings Bank*, 346 N.W.2d 791, 799 (Iowa 1984). None of these factors are evident. The jury awarded James Bandstra $3,400,000. Of this amount, International Harvester is liable for $1,020,000. While the award may be characterized as generous, it was within the evidence and should be allowed to stand.

## V.

■ Pursuant to an order from the Iowa Supreme Court, we have been asked to consider whether unnecessary matters were included in the appendix and, if so, tax costs to the offending party. Upon consideration of this question, we conclude that the appendix does not contain unnecessary matters. In light of the voluminous nature of the record, the appendix cannot be considered unnecessarily lengthy.

Finding no error, we affirm in all respects.

AFFIRMED.