**IOWA STATE BOARD OF ENGINEER-
ING EXAMINERS, Appellant,**

v.

**Kenneth G. OLSON, Appellee.**

No. 87–285.

Supreme Court of Iowa.

April 13, 1988.

Thomas D. Hanson and Robert B. Hanson of Hanson, Bjork & Russell, Des Moines, for appellant.

James D. McCarragher of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellee.

Considered by LARSON, P.J., and SCHULTZ, CARTER, NEUMAN, and SNELL, JJ.

SNELL, Justice.

On May 17, 1984, plaintiff, Iowa State Board of Engineering Examiners (Board), initiated this action, seeking injunctive relief against defendant, Kenneth G. Olson. The petition alleged that Olson, although not registered to do so, was engaging in the practice of professional engineering and using designations in conjunction with his name tending to imply his status as a professional engineer. Those allegations, if true, would demonstrate Olson to be in violation of Iowa statutes. *See* Iowa Code §§ 114.1, 114.24 (1983). The allegations have their genesis in Olson's testifying as an expert witness in an unrelated case. *See Bandstra v. International Harvester Co.*, 367 N.W.2d 282 (Iowa App.1985). A trial to the court in the present case resulted in the dismissal of the Board's petition. This appeal followed. Our review is de novo. Iowa R.App.P. 4.

I. The Board maintains that Olson's activities as a safety consultant and expert witness constitute the practice of professional engineering as defined in Iowa Code section 114.2. That statute provides, in pertinent part, that

[t]he practice of "professional engineering" within the meaning and intent of this chapter includes any professional service, such as consultation, investigation, evaluation, planning, designing, or responsible supervision of construction in connection with structures, buildings, equipment, processes, works, or projects, wherein the public welfare, or the safe-

guarding of life, health or property is or may be concerned or involved, when such professional service requires the application of engineering principles and data.

If the Board's contention on this point is correct, Olson would be in violation of the requirement that such practitioners be registered with the Board. *See* Iowa Code § 114.1 (1983). Olson, concededly, is not so registered.

Olson argues, however, that his challenged activities do not fall within those which the statute was intended to regulate. The district court agreed. Accordingly, we are presented with an issue of statutory construction. In resolving such issues, we may consider the purposes of the legislative enactment and the evils which the legislature sought to remedy. *E.g., State v. McKee*, 392 N.W.2d 493, 494 (Iowa 1986). This court has previously stated that the statute here under consideration was "designed to protect the public by making certain that one who undertakes to represent himself as a professional engineer and to offer his services as such will meet certain minimum standards." *Iowa State Bd. of Eng'g Examiners v. Electronic Eng'g Co.*, 261 Iowa 456, 457, 154 N.W.2d 737, 738 (1967).

Consistent with this goal, our legislature, in 1923, enacted the following predecessor to the current section 114.2:

"Professional engineering" means the practice of any branch of the profession of engineering other than military engineering. The practice of said profession embraces *the designing and the supervision of the construction of* public and private utilities, such as railroads, bridges, canals, harbors, river improvements, lighthouses, wet docks, dry docks, ships, barges, dredges, cranes, floating docks, and other floating property, *the design and the supervision of the construction of* steam engines, turbines, internal combustion engines and other mechanical structures, electrical machinery and apparatus, and of works for the development, transmission or application of power, and *the designing and the supervision of the construction of* municipal

works, irrigation works, water supply works, sewerage works, drainage works, industrial works, sanitary works, hydraulic works, structural works, and other public and private utilities or works *which require for their designing or the supervision of their construction such experience and technical knowledge as are required by this chapter.*

Iowa Code § 1855 (1924) (emphasis added).

The present version of this definition resulted from a 1937 comprehensive revision and amendment of what is now chapter 114. *See* 1937 Iowa Acts ch. 101.

 If a revised statute is ambiguous or susceptible to two constructions, reference may be had to prior statutes for the purpose of ascertaining legislative intent. *Kelly v. Brewer,* 239 N.W.2d 109, 114 (Iowa 1976). A legislative intent to make a substantive change will not be found if the revised statute is merely susceptible to two constructions. *State v. Peterson,* 327 N.W. 2d 735, 738 (Iowa 1982). Changes made by statutory revisions will not be construed as altering the law unless the legislature's intent to do so is clear and unmistakable. *E.g., State v. Osborn,* 368 N.W.2d 68, 69–70 (Iowa 1985). Massive revisions, such as that involved here, lend less support to the proposition that a change in meaning was intended by the change in language than it does to the proposition that the linguistic change reflects only an economy of words or style. *Kelly,* 239 N.W.2d at 114.

 This court has recognized that "professional engineer" within the statute is not synonymous with "engineer" in the general colloquial usage. *Electronic Eng'g,* 261 Iowa at 460, 154 N.W.2d at 740. We think it clear the original intent of the legislature, as reflected in the predecessor to section 114.2, was to regulate those activities which relate directly to design and construction; that is, activities which preceed the consummation of any particular project. This is evinced by the use of the phrase "the design(ing) and the supervision of the(ir) construction" four times in the original definition of "practice of professional engineering." *See, e.g.,* Iowa Code § 1855 (1924). We think the language was

revised more in recognition of the increasing number of engineering fields, *see Electronic Eng'g,* 261 Iowa at 460, 154 N.W.2d at 740, than in order to extend statutory coverage as far as the Board would have us hold today.

In *W.W. White Company v. LeClaire,* 25 Mich.App. 562, 563–64, 181 N.W.2d 790, 791 (1970), the court rejected the contention that an unlicensed architect's trial testimony relating to construction plans and cost estimates constituted the practice of architecture within that state's licensing statute. In so holding, the court made the following observations:

> The express purpose of the statute is to safeguard public life, health and property. It is not the intent of this licensing statute to protect the court against misleading or unqualified testimony. It is specious to argue that [an individual] must be a validly licensed architect to offer testimony identifying the construction plans in question.

25 Mich.App. at 564, 181 N.W.2d at 791 (citation omitted).

Similar reasoning is persuasive here. Although the Board argues it has no desire or statutory authorization to regulate the testimony of expert witnesses, its suggested holding would have precisely that effect. The logical extention of the Board's argument is that no witness could testify to the most elementary of physical principles so long as they involved the application of what are arguably engineering principles. Regulating testimony regarding the wheel and the lever is not, we think, the purpose of the statute.

We note our court of appeals presaged this result with its opinion in *Bandstra v. International Harvester Co.,* 367 N.W.2d 282 (Iowa App.1985), an appeal from the trial at which Olson gave the testimony which led to these proceedings. In *Bandstra,* the court concluded that

> the purpose of section 114 of the Iowa Code is to protect the public from persons who undertake to represent themselves as professional engineers and to offer services as such. Olson evaluated

certain facts and information solely for the purpose of testifying. We do not believe this should be characterized as offering services. His activities were not such that they affected the public that the statutory provision is designed to protect.

367 N.W.2d at 289.

We agree. *See also Lance v. Luzerne County Mfrs. Ass'n,* 366 Pa. 398, 401, 77 A.2d 386, 388 (1951) (expert testimony not the practice of engineering); *Hildebrand v. Kline,* 66 Pa. D & C 431, 436–37 (1948) (statutory duty to safeguard public welfare and resulting obligation to register as an engineer applies only to engineers engaged in some phase of actual construction) (dictum). We think the district court correctly construed the statute and we accordingly affirm on this point.

II. Iowa Code section 114.24 provides as follows:

Any person who is not legally authorized to practice in this state according to the provisions of this chapter, and [who] shall ... in connection with the person's name use any designation tending to imply or designate the person as a professional engineer ... may be restrained by permanent injunction.

The Board believes Olson to be in violation of this provision. The district court concluded to the contrary. The Board alleges error in this conclusion. We note that whether a particular designation raises the forbidden implication is a question of fact to be determined in each case. *Electronic Eng'g,* 261 Iowa at 459, 154 N.W.2d at 739. The Board must demonstrate Olson's violation of this statute by a preponderance of the evidence. *Id.* at 461, 154 N.W.2d at 740.

Before we resolve this issue, however, we must determine the scope of the record evidence which bears on the issue. Olson argues, and the district court concluded, that a 1981 compromise and settlement between the Board and Olson necessitates that we not consider evidence of his activities prior to that date. The Board, while not disputing that this is the effect a compromise and settlement would have on the record, contends that no such compromise and settlement was reached.

The record contains a December 9, 1981, letter from an attorney for the Board to Olson informing him that "a complaint has been made that you [Olson] have held yourself out as a professional engineer...." The letter goes on to say that

[i]n order to settle this matter without litigation or any admission of wrong doing [sic] on your part, it is agreed by you and the Board that ... you will not hold yourself out as a professional engineer in Iowa without being so registered.

The record also discloses Olson's efforts to comply with this agreement by making changes in his business cards and resumes consistent with the Board's request. Our law favors the adjustment and settlement of controversies without resorting to court action. *E.g., Dyer v. National By-Products, Inc.,* 380 N.W.2d 732, 733 (Iowa 1986). Forbearance to press a claim may serve as a consideration for a contract of settlement. *Id.* at 734–35.

We agree with the district court's conclusion that the 1981 letter and subsequent actions by the parties evince a compromise and settlement of their theretofore existing dispute. We think the parties by their settlement intended to dispose of all claims of Olson's statutory violations which existed at that time. Intention of the parties is the touchstone. *See Casey v. Koos,* 323 N.W.2d 193, 198 (Iowa 1982). In the absence of an express reservation of rights, the settlement disposes of all claims between the parties arising out of the event to which it relates. *Id.* The Board argues that even assuming such an agreement existed, Olson's post–1981 conduct evinces his breach of that agreement. Consequently, the Board contends we may look to the pre–1981 evidence. We do not believe, however, that such a breach has been demonstrated.

Our review of the pertinent record evidence persuades us to agree with the district court's conclusion that Olson is not in violation of section 114.24. The evidence upon which the Board relies consists of certificates reflecting membership in sever-

al professional organizations, business cards, resumes, and diplomas. That evidence which reflects Olson's post–1981 conduct falls far short of demonstrating by a preponderance his use of a designation tending to imply his status as an Iowa licensed professional engineer.

█ The most persuasive of this evidence is Olson's use of a business card which designates him on the reverse side as a "Registered Professional Safety Engineer." Immediately following this designation, however, is the qualification "State of California SF 2380—1977." A similar designation and qualification appears on a certificate which hangs in Olson's office. We do not believe these designations to be in contravention of the statute. We think the statute prohibits only designations which tend to present an unregistered individual as a professional engineer legally sanctioned by Iowa authorities to practice as such, thus prohibiting the false and misleading use of credentials. This is consistent with the statute's purpose of holding those who seek to practice professional engineering in Iowa to certain minimum standards. We do not think the statute was intended to preclude an individual's truthful, nondeceptive recitation of his or her bona fide credentials. The Board has failed to meet its burden. The judgment of the district court is affirmed.

Because we affirm on the Board's appeal we need not address Olson's cross-appeal which seeks the same result under the theory of issue preclusion.

AFFIRMED.