DECISION
This matter is before the Court on the complaint of the plaintiff Melvin Wolf filed pursuant to G.L. 1956 (1993 Reenactment) § 42-35-15, seeking judicial review of a final decision rendered by the State Board of Registration for Professional Engineers. Following a hearing, the Board voted that Wolf was engaged in the unauthorized practice of engineering in violation of chapter 8 title 5 of the Rhode Island General Laws, and also that Wolf submitted false information to the Board in violation of said chapter. After hearing the arguments of counsel, and after examining the record and the memoranda of the parties, the Court vacates and reverses the decision of the Board. The facts relevant to Plaintiff's appeal are as follows.
Melvin Wolf (Wolf) is a resident of Massachusetts, and is a professional engineer licensed to practice engineering in Massachusetts. He has been a registered professional engineer in Massachusetts since 1960. (Application at 1.) In 1993, Wolf attended two meetings in Rhode Island at the request of Liberty Mutual Insurance Company in respect to a property damage claim. The first meeting, held on July 6, 1993, was attended by Wolf, an adjustor from Liberty Mutual, and various individuals retained by the claimants, namely the attorney for the claimants and two professional engineers. (Tr. Feb. 16, 1994 at 10-11.) The engineers were L. Robert Smith (Smith) and Paul B. Aldinger (Aldinger). Both engineers are registrants of the Rhode Island State Board of Registration for Professional Engineers (Board). Smith is also chairman of the Board. The purpose of this meeting, held at a branch office of Liberty Mutual located on the East Side of Providence, was to discuss whether properties owned by the claimants and located in North Kingstown, Rhode Island had been damaged by a highway blasting project. (Tr. Feb. 16, 1994 at 10-15). At the meeting, the engineers exchanged opinions and reviewed blasting logs obtained from the Department of Transportation. (Tr. February 16, 1994 at 11-15).
A second meeting took place some days later at the properties in North Kingstown. In attendance were Wolf, an adjuster from the insurance company, and Smith. Smith testified that at this meeting Wolf made a disparaging remark about the quality of engineering work being done by Smith and Aldinger. (Tr. Feb. 16, 1994 at 12.) Thereafter, Smith filed a complaint with the Board, alleging that Wolf was practicing engineering and holding himself out to be a professional engineer in Rhode Island without a license. Wolf denied the charges. The Board then requested that Wolf appear at a hearing on the allegation of Wolf's unauthorized practice of engineering. The hearing was conducted on February 16, 1994 and on March 16, 1994.
Prior to the hearing, Wolf submitted to the Board an application to become a registered professional engineer in Rhode Island pursuant to G.L. § 5-8-11. In one section of Wolf's application, he indicated that he had earned a bachelor's degree
from Northeastern University in 1951. Also prior to the hearing, the Board, pursuant to its apparent request, received a letter from Northeastern University dated March 7, 1994, stating that Wolf had received an associate's degree in engineering in 1951.
During the hearing on the issue of the unauthorized practice of engineering, the vice-chairman of the Board attempted to cross-examine Wolf on matters contained in his application for registration. (Tr. Feb. 16, 1994 at 18-19; Tr. Mar. 16, 1994 at 5-7). Wolf objected on the grounds of relevance. Wolf, through counsel, thereafter stated on the record that he was withdrawing his application for registration. (Tr. Mar. 16, 1994 at 3, 6-7). Counsel for the Board, over the objection of Wolf's counsel, produced a copy of the letter form Northeastern University and read it into the record. (Tr. Mar. 16, 1994 at 6.) The Board then voted that Wolf's application could not be withdrawn. (Tr. Mar. 16, 1994 at 11). Under the advice of counsel, Wolf did not testify at the hearing, except to confirm that he was known as Melvin and Manny.
The Board went into executive session and apparently formulated a series of motions. After the executive session, the vice-chair offered the motions on the record. The Board voted in the affirmative on each of the following motions:
 [1] [T]hat the board find as fact that Melvin H. (Manuel) Wolf engaged in the unauthorized practice of engineering in the State of Rhode Island or about 6 July, 1993; 23 July, 1993 and the 23rd of August, 1993 by providing engineering opinions and information for compensation to the public in violation of Rhode Island laws Title 5, Chapter 8, paragraphs 1, 2 and 18.
 [2] [T]hat this Board forward these findings and information to the Attorney General of the State of Rhode Island and the United States Attorney's Office for criminal prosecution . . . that the findings of the Board be forwarded to the Massachusetts Board of Registration and to the National Council of Engineers — National Council of Examination for Engineers and Surveyors for action as they deem appropriate. . . . that this matter be referred to the Superintendent of Insurance of the State of Rhode Island.
 [3] [T]hat the application filed by Melvin H. Wolf on January 3rd, 1994 contained false information submitted by the applicant solely for the purpose of deceiving this Board into permitting the registration of the applicant as a professional engineer in the State of Rhode Island.
 [4] [T]hat the Board place an advertisement in the Providence Journal indicating that Melvin H. Wolf of the firm of Bessom Tilton has practiced engineering in the State of Rhode Island without a license and in direct violation of law.
 [5] [T]hat the Board seek conjunctive [sic] relief in the name of the Board against Mr. Wolf to prevent unauthorized practice of engineering.
 [6] [T]hat the Board contact the Liberty Mutual Insurance Company and the Rhode Island Joint Reinsurance Association in regards to services provided to them by Mr. Wolf in the State of Rhode Island. (Tr. Mar. 16, 1994 at 19-22.)
Wolf filed this complaint seeking review on March 25, 1994 and also applied for a temporary restraining order and preliminary injunction seeking to enjoin the Board from implementing its decision. A temporary restraining order was granted by a justice of the superior court on April 8, 1994 restraining the Board from placing an advertisement in the Providence Journal and from notifying the U.S. Attorney's office, the Massachusetts Board of Engineering, the National College of Engineers, the Rhode Island Insurance Commission, Liberty Mutual, and the Rhode Island Joint Reinsurance Underwriters Associates.
The review of a decision of the Board by this Court is controlled by G.L. § 42-35-15(g). This Court's review is limited to determining whether substantial evidence exists to support the Board's decision. Newport Shipyard v. Rhode IslandCommission for Human Rights, 484 A.2d 893 (R.I. 1984). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d 453 (R.I. 1986).
The parties have agreed that the Board's vote on the record is a final order and neither party contests its sufficiency under G.L. § 42-35-12. In its order, the Board found that Wolf's activities constitute the unauthorized practice of engineering. The Court disagrees.
The question of whether the Board has the authority to notify the entities set forth above of its finding of unauthorized practice, and to advertise its finding in the Providence Journal is rendered moot by this holding. However, the Court notes that the Board's authority to notify certain third parties and to advertise in a local newspaper is limited to situations where a registrant of the Board is disciplined pursuant to § 5-8-18
with the result that the registrant's license is suspended, revoked, or not renewed by the Board. See Rules and Regulations — Board of Registration for Professional Engineers, Vol. 8 CRIR, III — 1 "Publication for Disciplinary Actions" Rule 16 060 006 at 12-13 (Oct. 20, 1994). The Board does not have the authority either under its rules or pursuant to chapter 8 to so notify third parties or to so advertise where an individual who is not registered by the Board is alleged to be engaged in the unauthorized practice of engineering, which pursuant to §5-8-20 is a misdemeanor. In that latter instance, the Board's authority is limited to filing a civil action for injunctive relief pursuant to § 5-8-8(c) in order to restrain the alleged violation, and to referring the matter, pursuant to §5-8-20, to the duly constituted officer of this state delegated to prosecute those charged with criminal violations, that is, the Attorney General. Under its enabling statute, then, the Board has the power to discipline its registrants, but does not have the power to discipline or prosecute non-registrants. Because §5-8-20 is clear that it is the duty of state officers to prosecute persons violating chapter 8, notification of the United States Attorney for prosecution thereunder is also statutorily unauthorized.
Although the Board's authority and remedies are limited in cases involving the alleged unauthorized practice of engineering, the Board has the power to investigate such cases and to make a determination that a person is engaged in the unauthorized practice of engineering. The court finds, however, that the Board's determination in this case is not supported by the law.
The practice of engineering in the State of Rhode Island is regulated by title 5 chapter 8 of the Rhode Island General Laws. The Rhode Island regulatory scheme requires, with several exceptions not relevant here, that both individuals and corporations obtain certification before providing engineering services in the State of Rhode Island.[1] G.L. §§ 5-8-1, 11. The express purpose underlying the regulation of the practice of engineering is the protection of the public. G.L. § 5-8-1
provides in pertinent part:
 "In order to safeguard life, health, and property, and to promote the public welfare, the practice of engineering in this state is hereby declared to be subject to regulation in the public interest. It shall be unlawful for any person to practice, or to offer to practice, engineering in this state, as defined in the provisions of this chapter, or to use in connection with his or her name or otherwise assume, or advertise any title or description tending to convey the impression that he or she is an ensincer unless that person has been duly registered or exempted under the provisions of this chapter."
The unauthorized practice of engineering is a misdemeanor. See
G.L. § 5-8-20.
General Laws § 5-8-2(f) defines the practice of engineering as follows:
 "Practice of engineering," within the intent of this chapter, means any service or creative work, the adequate performance of which requires engineering education, training, and experience in the application of special knowledge of the mathematical, physical, and engineering sciences to such services or create work such as consultation, investigation, evaluation surveys, planning and design of engineering systems, and the supervision of construction for the purpose of assuring compliance with specifications; and embracing those services or work in connection with any public or private utilities structures, buildings, machines, equipment, processes, work or protects wherein the public welfare or the safeguarding of life, health or property is involved or concerned. (Emphasis added.)
The definition of the practice of engineering does not by its terms include the giving of expert testimony at a trial or judicial proceedings, or the serving as an engineering expert to a litigant or to an interested party in anticipation of litigation.
The record in this case indicates that Wolf's role was that of an engineering expert in an adversarial setting. This would be true whether the meetings which Wolf attended were being conducted in anticipation of litigation or whether litigation was merely a contingency. See Fireman's Fund Insurance Co. v.McAlpine, 120 R.I. 744, 748, 391 A.2d 84, 87 (1978). A claim for damage against Liberty Mutual arose out of a blasting project. Wolf's credentials show that he was a member of the Society of Explosive Engineers, and the Massachusetts Governor's Advisory Committee on Blasting and Explosives. (Application at 1.) At his current engineering firm, with which he has been affiliated for almost 18 years, he investigates and determines construction failures, and structural safety. The presence at the initial meeting on the claimants' attorney and their two engineering experts further evidences the adversarial nature of the matter. There is also reference in the record to Wolf's giving testimony. (Tr. Feb. 16, 1994 at 12-13).
The Rhode Island Supreme Court recently held in Owens v.Payless Cashways, Inc. et al, 670 A.2d 1240 (R.I. 1996) that the lack of an engineering license was not a bar to accepting a person as an expert witness. Id. at 1241. In that case, the defendants objected to an engineering expert proffered by the plaintiff, and asserted that the statutory definition of the phrase "practice of engineering" included the giving of expert testimony in a court of law. Id. at 1242. The trial justice stated that he was not able to "separate" the witness's conduct as an expert from "`all of the professional activity that is required for him to reach the opinion,'" and concluded that the plaintiff's witness could not give his opinion because he was not a licensed engineer. Id. at 1243. The Supreme Court disagreed, stating "We find no language in chapter 8 of title 5 mandating registration as a prerequisite to expert witness qualification." Id. at 1244. The Court stated:
 "If we were to adopt defendants' contention made on oral argument, we would in effect preclude expert testimony from, for example, Archimedes himself, the Greek mathematician, physicist, and inventor — credited with the discovery of the principle of the lever — had he come to testify in our courts without first obtaining his license to practice engineering in Rhode Island. Wernher von Braun, the father of our national space program, absent a Rhode Island license, would also fall into that category of ineligibility. We do not believe that our Legislature intended that persons of great learning in the engineering field should be barred from testifying in our courts, and assisting the triers of fact, merely because they have not been licensed here in their respective fields of expertise."
Id. See also State v. Maudlin, 416 N.E.2d 447 (Ind. App. 1981);Kuisis v. Baldwin — Lima-Hamilton Corp., 457 Pa. 321,319 A.2d 914 (1974); South Burlington School District v.Calcagni-Frazier-Zajchowksi Architects Inc., 138 Vt. 33,410 A.2d 1359 (1980).
Other courts have held that giving expert testimony is not the practice of engineering. See. e.g., Iowa State Bd. ofEngineering Examiners v. Olson, 421 N.W.2d 523, 525 (Iowa 1981);Lance v. Luzerne County Mfrs. Ass'n, 366 Pa. 398, 401,77 A.2d 386, 388 (1951). State v. Willian, 423 N.E.2d 668, 671 (Ind. 1981).
To construe the term "practice of engineering" as broadly as philosophically possible, as the Board urges the Court to do, defies the plain meaning of the statutory scheme as a whole. The express purpose of chapter 8 is a pragmatic one, and it is touchstone, i.e., "to safeguard life, health, and property and to promote the public welfare." The stated purpose establishes the parameters of what constitutes the practice of engineering, with activities that serve that overriding purpose falling inside the parameters, and activities which do not, falling outside them. In the instant case, Wolf's activities were not such that they affected the public welfare which the statutory scheme was designed to protect.
Several cases have examined the underlying purpose of professional regulation. In W.W. White Co. v. Le Claire, 25 Mich. App. 562, 181 N.W.2d 790 (1970), the court did not accept the assertion that an unregistered architect's trial testimony concerning construction plans and cost estimates constituted the practice of architecture. 25 Mich. App. at 563-64, 181 N.W.2d at 791. The Court noted:
 "The express purpose of the statute is to safeguard public life, health, and property. M.C.L.A. § 338-551, supra. It is not the intent of this licensing statute to protect the court against misleading or unqualified testimony. It is specious to argue that [an individual] must be a validly licensed architect to offer testimony identifying the construction plans in question."
25 Mich. App. at 564, 181 N.W.2d at 791
In State Bd. of Engineering Examiners v. Olson, 421 N.W.2d 253 (Iowa 1988), it was held that an engineer's activities as a safety consultant and expert witness were not the practice of engineering within the meaning of the regulatory statute requiring engineers to be registered. Id. at 525-26. There the Supreme Court of Iowa commented.
 "The logical extension of the Board's argument is that no witness could testify to the most elementary of physical principles so long as they involved the application of what are arguably engineering principles. Regulating testimony regarding the wheel and the lever is not, we think, the purpose of the statute."
Id. at 525. Referring to the appeal from the trial at which the engineer gave his expert testimony, the Olson court agreed that
 "the purpose of section 114 of the Iowa Code is to protect the public from persons who undertake to represent themselves as professional engineers and to offer services as such. Olson evaluated certain facts and information solely for the purpose of testifying. We do not believe this could be characterized as offering services. His activities were not such that they affected the public that the statutory provision is designed to protect."
Id. at 525-26 (quoting Bandstra v. International Harvester Co.,376 N.W.2d 282, 289 (Iowa App. 1985)).
The same rationale applies where one serves as an expert to a party in anticipation of litigation. That is, it is not the intent of the regulatory statute to protect an insurer such as Liberty Mutual, or a litigant, or a party in anticipation of litigation against misleading or unqualified testimony. The statute clearly speaks to the protection of the public. Nothing Wolf did in his capacity as an expert for Liberty Mutual compromises the public welfare or the safety of life, health or property. Wolf's activities fall outside the parameters of the practice of engineering within the meaning of chapter 8, and he was not therefore engaged in the unauthorized practice of engineering.
The Board also chose to conduct a hearing, at least in part, on the issue of whether Wolf, as an applicant, gave false evidence to the Board in attempting to obtain a certificate. The hearing was conducted without providing Wolf with sufficient notice in accordance with the Administrative Procedures Act (APA). It proceeded in spite of Wolf's request that he be permitted to withdraw his application. Wolf contends that the Board acted arbitrarily and capriciously and exceeded its statutory authority when it denied his request to withdraw his application for registration.
The APA requires that in all contested cases, a party must be given an opportunity for a hearing with reasonable notice. G.L. § 42-35-9(A). That notice shall include:
 "(1) A statement of the time, place, and nature of the hearing;
 (2) A statement of the legal authority and jurisdiction under which the hearing is to be held;
 (3) A reference to the particular sections of the statutes and rules involved;
 (4) A short and plain statement of the matters inserted [sic]. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved and detailed statement shall be furnished.
 (c) Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved."
Prior to the second hearing date, the Board had in its possession the correspondence from Northeastern University stating that Wolf had earned only an associate's degree in engineering. At the hearing, counsel for the Board produced the letter and read it into the record. The Board clearly considered the issue of submitting false information to be among those to be addressed at the hearing.
Normally, the Board's review of an application for registration would not in itself constitute a contested case subject to the procedural safeguards mandated by the APA. SeeProperty Advisory Group, Inc. v. Rylant, 636 A.2d 317, 318 (R.I. 1994). The hearing in question was not for the purpose of considering the application, but rather to consider whether Wolf, an applicant, violated G.L. § 5-8-20 by submitting false information to the Board.
At the point where the Board decided to pursue the additional violation of submitting false information, the matter relating to the contents of the application became a contested case subject to the requirements of § 42-35-9. Wolf was entitled to no. Lee of that allegation prior to the hearing.
The purpose of notice is to assure that a party is apprised of the nature of the hearing so that he or she can adequately prepare. See Correia v. Norberg, 120 R.I. 793, 801, 391 A.2d 94
(1978). In this case, the failure of the Board to give Wolf notice of the nature of the hearing prejudiced his rights.
The Board's finding ". . . as fact that the application filed by Melvin H. Wolf on January 3rd, 1994 contained false information submitted by the applicant solely for the purpose of deceiving this Board into permitting the registration of the applicant as a professional engineer in the State of Rhode Island. . ." is therefore vacated.
Whereas the withdrawal of the application before determination would preclude the Board from acting upon it, the withdrawal will not cure a violation of G.L. § 5-8-20, if in fact, one has occurred. G.L. § 5-8-20 provides in pertinent part that: "any person who shall give any false or forged evidence of any kind to the Board or to any member thereof . . . obtaining or attempting to obtain a certificate of registration . . . shall be guilty on a misdemeanor. . . ."
Once Wolf requested to withdraw his application, consideration of the application because moot. When the Board made its finding that Wolf submitted false information for the sole purpose of deceiving the Board, he was no longer an applicant. The only purpose of considering the issue at that point would be to determine whether or not to refer the matter to the Attorney General. The Board is without authority to enforce or prosecute such violations of G.L. § 5-8-20. If the Board has information indicating a substantial likelihood that a crime has been committed, referral to the Attorney General would be appropriate.
For the reasons stated, the decision of the Board is vacated and reversed. Counsel shall prepare an order consistent with the Court's decision.
[1] General Laws § 5-8-21 (1)(i), permits a nonresident professional engineer who is registered to practice engineering in another state to practice engineering in Rhode Island for 30 days under a temporary certificate of registration issued by the Board. G.L. § 5-8-21 (1) (ii) permits nonresidents or recent arrivals, who are registered in another state and who file an application with the Board for certification, to practice engineering in excess of 30 days and for the time the Board requires to consider the application.