**Joseph C. BEEMAN and Beverly A. Beeman, Appellees,**

v.

**MANVILLE CORPORATION ASBESTOS DISEASE COMPENSATION FUND and Keene Corporation, Appellants.**

**No. 90–1514.**

Supreme Court of Iowa.

Feb. 17, 1993.

Rehearing Denied March 26, 1993.

Margaret S. Garvey of Freeborn & Peters, Chicago, IL, and Rebecca Boyd Parrott of Davis, Grace, Horvath, Gonnerman & Rouwenhorst, P.C., West Des Moines, for appellant Manville.

Murray E. Abowitz and Gregory J. Ryan of Abowitz & Welch, Oklahoma City, OK, and Timothy J. Walker of Whitfield, Musgrave & Eddy, Des Moines, for appellant Keene Corp.

Roxanne Barton Conlin, Des Moines, for appellees.

McGIVERIN, Chief Justice.

Defendants appeal and plaintiffs cross-appeal from a district court judgment after a jury verdict in favor of plaintiffs in this asbestos litigation. We affirm.

I. *Background facts and proceedings.* Based on the record, a jury could find the following facts. Plaintiff Joseph Beeman, age sixty-two, had a work history since 1953 as a plumber and pipefitter, installing copper piping and gas appliances. Although not an insulator himself, Beeman worked closely with pipe insulators throughout his career. At trial Beeman and several of his co-workers testified about the dusty conditions in which they had worked. They later discovered this dust contained asbestos. The dust was from asbestos-containing products manufactured by Johns–Manville Corporation (hereinafter JM),[1] Keene Corporation (hereinafter Keene),[2] and other companies.

---

1. Johns–Manville Corporation is in bankruptcy and under the reorganization plan the present defendant, Manville Corporation Asbestos Disease Compensation Fund, has been substituted to assume liability for JM.

2. Keene is a successor corporation to those which manufactured some of the asbestos to which Beeman was allegedly exposed.

As a result of his exposure to asbestos products, Beeman suffers from pleural plaques, a thickening of the lining of the lungs, and, according to some evidence, asbestosis, a scarring of the lungs caused by inhalation of asbestos fibers. Neither condition is cancerous or necessarily fatal. Expert testimony stated that asbestotics face an increased risk of lung cancer and mesothelioma, a specific form of lung cancer caused by exposure to asbestos. There was no evidence that Beeman smoked or used tobacco products except occasionally when fishing.

Beeman sued defendants JM, Keene, and numerous other manufacturers of asbestos-containing products for injuries he allegedly suffered as a result of his occupational exposure to asbestos. Theories of recovery included strict products liability, negligence, fraud, conspiracy, and breach of warranty. His wife, plaintiff Beverly Beeman, sued for loss of consortium.

By the time of trial, all defendants except JM and Keene had either settled or been dismissed. At the time of trial, Beeman was fully employed and had not missed any work because of his condition, except for his attendance at trial.

At trial, experts testified that asbestos dust does not "settle"; thus Beeman likely inhaled large amounts of asbestos during his career. There was also testimony that asbestos fibers remain in the lungs for twenty to thirty years after exposure. As the dose of exposure increases, the likelihood of developing some asbestos-related disease increases. Once an individual reaches a "threshold exposure limit," each additional asbestos fiber increases the risk and seriousness of disease.

Evidence showed that some studies were reporting possible health problems connected with exposure to asbestos as early as the 1920s and 1930s. JM itself financed asbestos hazards studies in the 1940s and 1950s. However, it was not until 1965, when the Selikoff study was published, that a clear connection between exposure to asbestos by end-users, such as Beeman, and lung problems was established.

Before trial, defendants JM and Keene moved in limine to preclude evidence that inhaling asbestos fibers causes cancer and that manufacturers conspired to conceal information from the public and end-users about the hazards of asbestos. The district court overruled these motions. The court also overruled Keene's motion for a bifurcated trial and motion in limine regarding punitive damages. The court did, however, grant JM and Keene a continuing objection based on lack of relevancy to all evidence relating asbestos exposure to cancer.

At trial, Beeman presented evidence of conspiracy and fraud concerning the dangers of asbestos only against JM, but withdrew those allegations before the case was submitted to the jury.

The jury returned a verdict for Joseph Beeman of $1,175,000 in actual damages, finding JM ninety percent at fault and Keene ten percent at fault. The jury also awarded punitive damages against Keene only of $5 million. Beeman's wife received damages for loss of consortium, the amount of which is not at issue on appeal. Defendants do contend, however, they were not at fault, and thus have no liability to Beverly Beeman.

JM and Keene filed post-trial motions for new trial and judgment notwithstanding the verdict under Iowa Rules of Civil Procedure 243 and 244. In its rulings, the district court set aside the punitive damages award against Keene and reduced Beeman's actual damage award by $669,200, decreasing the future medical expenses award and setting aside completely an award for Beeman's alleged lost opportunity to live out his full life expectancy. The net result of the post-trial rulings was judgment for plaintiff Joseph Beeman for compensatory damages only against defendant JM or the Manville Fund for $455,220 and against defendant Keene for $50,580.

JM and Keene appealed, and Beemans cross-appealed from this final judgment.

For simplicity, we regard Joseph Beeman as the only plaintiff.

■ II. *Evidence concerning failure to warn of asbestos hazards.* At trial, Beeman presented evidence showing JM knew of asbestos hazards long before the 1965 Selikoff study. Beeman presented documents known as the Sumner Simpson papers, a series of letters between Sumner Simpson, late president of Raybestos (now "Raymark"), and Raybestos employees, organizations such as the Industrial Hygiene Foundation, the United States Public Health Service, *Asbestos* magazine, the Saranac Laboratory, and other asbestos manufacturers, including JM. These documents outline JM's knowledge of asbestos hazards and its methods of concealing this knowledge from the public.

Defendant Keene moved for bifurcation of trial as to it on this issue, but the trial court denied the motion. After Beeman had presented all such evidence, he withdrew his claims for conspiracy and fraud against JM before the case was submitted to the jury. Both JM and Keene later moved that all such evidence should have therefore been stricken from the record due to lack of relevancy. The trial court denied these motions and gave the jury limiting instructions to use the evidence only in evaluating the defendant JM's duty to warn users of the hazards of asbestos. The court also instructed the jury that this evidence against JM should not be considered against Keene.

■ Bifurcation of trial and allowance of withdrawal of pleadings are matters of trial court discretion. *Briner v. Hyslop,* 337 N.W.2d 858, 870 (Iowa 1983) (bifurcation); *Brown v. Correll,* 227 Iowa 659, 660, 288 N.W. 907, 908 (1939) (withdrawal of pleadings). As such, we will disturb such rulings only if the trial court abused its discretion. Other courts have held the Sumner Simpson papers are admissible in asbestos cases to show a defendant knew or should have known of the dangers of asbestos, and thus had a duty to warn product users. *See Jackson v. Johns–Manville Sales Corp.,* 750 F.2d 1314 (5th Cir.1985), *aff'd,* 781 F.2d 394 (5th Cir.1986), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). We believe the trial court in this case did not abuse its discretion in denying defendants' motion to strike the evidence of conspiracy and fraud because the evidence is relevant to show a duty to warn. Therefore, we affirm the trial court's admission of this evidence.

III. *Admission of cancer evidence to prove plaintiff's fear of cancer.* Over defendants' objections, the district court admitted evidence from Beeman's experts regarding cancer and the increased risks of cancer from exposure to asbestos. The court instructed the jury that this evidence was to be used only to determine defendants' duty to warn of the hazards of asbestos exposure and the reasonableness of Beeman's fear of contracting cancer. Defendants objected on the grounds that because Beeman did not presently have cancer and did not show he would probably contract cancer in the future, the evidence was irrelevant. Defendants also asserted that even if the cancer evidence was somehow relevant, its probative value was substantially outweighed by the unfair prejudice it would cause defendants under Iowa Rule of Evidence 403, and that no limiting instructions to the jury could compensate for such prejudice.

. Evidence of cancer and the increased risk of developing cancer from exposure to asbestos is admissible to show: 1) a defendant's duty to warn of its product's hazards, *Dartez v. Fibreboard Corp.,* 765 F.2d 456, 468 (5th Cir.1985); 2) the reasonableness of plaintiff's fear of cancer, *Sorenson v. Raymark Industries, Inc.,* 51 Wash. App. 954, 756 P.2d 740, 742 (1988); and 3) plaintiff's increased risk of contracting cancer in the future, *Jackson,* 750 F.2d at 1321, *aff'd,* 781 F.2d at 410–13.

■ A. *Duty to warn.* Evidence of cancer from exposure to asbestos is admis-

sible to show the defendant had a duty to warn plaintiff of the hazards of its asbestos products. Several courts have stated that because a manufacturer is held to have the knowledge and skill of an expert, such evidence is relevant to proving whether the manufacturer knew or should have known of the danger of its products and whether the manufacturer was negligent in failing to tell consumers of its knowledge. *Dartez*, 765 F.2d at 468; *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1089 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). Similarly, this court has held a duty to warn depends upon superior knowledge, and such a duty exists when one may reasonably foresee a danger of injury or damage to one less knowledgeable unless an adequate warning is given. *Lakatosh v. Diamond Alkali Co.*, 208 N.W.2d 910, 913 (Iowa 1973). It is this reasonable foreseeability which triggers the obligation to warn. *Id.* Whether such a warning should have been given is a question for the jury. *Id.*

■ In the present case, the trial court admitted the cancer evidence as bearing on defendants' duty to warn about the dangers connected with exposure to their asbestos products. The court then admonished the jury to consider this evidence only for the issues of defendants' duty to warn and Beeman's reasonable fear of cancer. As manufacturers, defendants are held to have the knowledge of experts; therefore they should have known of the hazards inherent in their asbestos products. Because they should have known of the dangers, defendants had a duty to warn consumers. Therefore, the cancer evidence was properly admitted to show defendants' duty to warn.

■ Defendants also complain that any limiting instruction is insufficient to compensate for the unfair prejudice such evidence is certain to create. However, we believe juries understand limiting instructions. To believe otherwise would be asking appellate courts to speculate that a jury disregarded evidence and clear admonitions. *Raney v. Honeywell, Inc.*, 540 F.2d

932, 936 (8th Cir.1976). There is a strong presumption that proper limiting instructions reduce any possible prejudice to acceptable levels. *United States v. Kilcullen*, 546 F.2d 435, 447 (1st Cir.1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).

One court has held that when a plaintiff introduces an extreme amount of cancer-causing evidence in an asbestos case to prove defendant's duty to warn, the probative value of the evidence is substantially outweighed by its unfair prejudice, and the evidence should be excluded. *Jackson*, 750 F.2d at 1321, *aff'd*, 781 F.2d at 409. However, the same court held that even if such evidence is thus not admissible to show a defendant's duty to warn, the evidence is admissible in any event to show plaintiff has a fear of contracting cancer and that the fear is reasonable. *Id.* at 1321, *aff'd*, 781 F.2d at 409–10, 413–15.

■ *B. Beeman's reasonable fear of cancer.* Evidence of cancer and an increased risk of cancer from exposure to asbestos is admissible to show a plaintiff's fear of cancer. A plaintiff's fear of cancer is relevant in considering damages for past and future mental pain and suffering. In particular, several courts have held in asbestos cases that the evidence is admissible to show the reasonableness of the fear. *See, e.g., In re Moorenovich*, 634 F.Supp. 634, 637 (D.Me.1986); *Farrall v. A.C. & S. Co.*, 558 A.2d 1078, 1080 (Del.Super.Ct.1989); *Koker v. Armstrong Cork, Inc.*, 60 Wash.App. 466, 804 P.2d 659, 669 (1991); *Sorenson*, 756 P.2d at 742. Such evidence is admissible even though a plaintiff does not presently have cancer and did not show a probability of getting cancer in the future. *Dartez*, 765 F.2d at 467–68; *Koker*, 804 P.2d at 669; *Sorenson*, 756 P.2d at 740–42. This is because the claim is for the *present* fear of cancer, not for a future loss resulting from cancer. *See Farrall*, 558 A.2d at 1080.

■ Beeman's fear is happening now; it is not contingent upon developing cancer. Whether Beeman will probably develop cancer is thus irrelevant to proving his present, concrete fear of developing cancer.

Evidence of cancer resulting from exposure to asbestos is relevant to whether plaintiff's fear is reasonable. *Farrall*, 558 A.2d at 1080. Whether the fear is reasonable bears upon the consideration of damages for past and future mental pain and suffering. Expert testimony regarding the increased likelihood of cancer resulting from such exposure is therefore helpful to the jury in deciding the reasonableness of the fear, and such expert testimony is admissible for that purpose. *Id.*

However, even when cancer evidence is admitted to show plaintiff's reasonable fear of cancer, parties must be careful not to "overshadow" the case with "the dread specter of cancer." *In re Moorenovich*, 634 F.Supp. at 638.

A claim for a reasonable fear of cancer is different from a claim for an increased risk of cancer.

*C. Increased risk of cancer.* Beeman did not ask that the cancer evidence be admitted to prove a claim of an increased risk of cancer. Therefore, we need not discuss that theory of admissibility.

We conclude that the trial court did not abuse its discretion in admitting the cancer evidence, as admission of cancer evidence to show the reasonableness of plaintiff's fear of cancer and defendants' duty to warn of the hazards of its products is in accordance with the cited authority from other jurisdictions, with which we agree.

 IV. *Admission of expert testimony different from expert's deposition testimony.* Defendants next contend the trial court erred in admitting Dr. David A. Schwartz's trial testimony that Beeman suffered from asbestosis, which differs from Dr. Schwartz's pre-trial deposition testimony that Beeman suffered only from pleural plaques, a different condition from asbestosis.

Apparently, Dr. Schwartz received some of Beeman's medical records prior to his deposition. Included in the records was an April 1990 x-ray of Beeman's lungs, but it seems Dr. Schwartz's office staff misplaced that x-ray. Dr. Schwartz then based his deposition testimony on a 1987 x-ray instead. Based on the 1987 x-ray, Dr. Schwartz testified at his deposition that Beeman suffered only from pleural plaques.

At 11:00 p.m. the night before Dr. Schwartz was to testify at trial regarding Beeman's condition, the 1990 x-ray reappeared and Dr. Schwartz viewed it. Dr. Schwartz then decided he would have to change his diagnosis to asbestosis, a more serious condition than pleural plaques. Beeman's counsel immediately called defendants' counsel that night and informed them of Dr. Schwartz's new diagnosis. The next morning at trial defendants objected to Dr. Schwartz's proposed changed testimony on the basis of Iowa Rule of Civil Procedure 125(d), which states that an expert's testimony at trial may not be inconsistent with the expert's testimony given in discovery proceedings. Beeman's counsel argued that the court could admit the changed testimony under rule 125(c), which states that the court may, in its discretion, exclude or limit the expert's testimony, or make such orders as are just when the identity or subject of such expert's testimony "has not been previously disclosed."

The court found Dr. Schwartz's new testimony was in fact inconsistent with his deposition testimony under rule 125(d), but still decided to admit his new diagnosis before the jury. Meanwhile, the court delayed Dr. Schwartz's testimony until after defendants had redeposed him. The court based its decision to conditionally admit the changed testimony on rule 125(d), stating it felt such power was inherent in the rule and that the redeposition of Dr. Schwartz and the delay of his trial testimony adequately protected defendants.

 We affirm the trial court's decision to conditionally admit the changed expert testimony, although our affirmance is based in part on rule 125(c) and the reasons urged by plaintiff Beeman. In matters of expert testimony under rule 125, the trial court has broad discretion. *Preferred Mktg. Assoc. Co. v. Hawkeye Nat'l Life Ins. Co.*, 452 N.W.2d 389, 393 (Iowa 1990). We will not disturb such decisions unless

the trial court abuses its discretion. *Id.* Although defendants cite Iowa cases in which trial courts excluded changed expert testimony under rule 125, we note that in each decision we *affirmed* the trial court, because it has broad discretion. We also note that recently in *Vachon v. Broadlawns Medical Foundation,* 490 N.W.2d 820, 824–25 (Iowa 1992), we affirmed under rule 125 the trial court's admission of a medical expert's testimony on causation, even though interrogatory answers and a letter to plaintiff's counsel did not specifically outline such testimony.

We find no abuse of discretion in the court's admission of Dr. Schwartz's changed testimony.

■ V. *Substantial evidence supporting defendant Keene's liability.* At the close of Beeman's evidence and at the close of all evidence, Keene moved for a directed verdict on the basis that Beeman had failed to prove by substantial evidence that Keene's products were a proximate cause of Beeman's injuries. The trial court denied the motion both times.

Our review is for correction of errors at law. Iowa R.App.P. 4. When reviewing a motion for directed verdict, we view the evidence in the light most favorable to the non-moving party. *Henkel v. R & S Bottling Co.,* 323 N.W.2d 185, 187–88 (Iowa 1982). If reasonable minds could differ as to the outcome, then a question arises for the jury. *Id.* If there is substantial evidence in the record such that a reasonable trier of fact could find for the party, then the jury's verdict is binding on the reviewing court. Iowa R.App.P. 14(f)(1). *See also Poulsen v. Russell,* 300 N.W.2d 289, 294 (Iowa 1981).

In this case, Beeman testified he was exposed to Keene's asbestos-containing products several times in his career. He was exposed to Keene's Monoblock product at Mary Greeley Hospital in Ames for approximately two weeks in the late 1950s and for at least one week in the early 1960s. A co-worker from the Mary Greeley worksite, Robert Williams, corroborated Beeman's exposure to Monoblock. While it is true that Monoblock contains only 2% or less asbestos, Beeman presented medical evidence that each exposure to asbestos contributes to the disease process. Keene contends this is not enough to prove exposure to Keene's Monoblock proximately· caused Beeman's injuries.

■ Questions of proximate cause are for the jury. *Bandstra v. Int'l Harvester Co.,* 367 N.W.2d 282, 285 (Iowa App. 1985). Only in exceptional cases is proximate cause decided as a matter of law. Iowa R.App.P. 14(f)(10). *See also Bandstra,* 367 N.W.2d at 285. A product defect merely has to be *a* proximate cause, not *the* proximate cause. *Id.* at 287. Other courts have held that a reasonable inference of exposure to a defendant's asbestos-containing product, coupled with expert testimony regarding asbestos fiber drift and the cumulative effects of exposure to asbestos, is enough to prove proximate cause in the asbestos products liability context. *See Lockwood v. AC & S, Inc.,* 109 Wash.2d 235, 744 P.2d 605, 613 (1987). *See also Schultz v. Keene Corp.,* 729 F.Supp. 609, 615 (N.D.Ill.1990); *Thacker v. UNR Indus., Inc.,* 151 Ill.2d 343, 177 Ill.Dec. 379, 389, 603 N.E.2d 449, 459 (1992); *Eagle–Picher Indus., Inc. v. Balbos,* 326 Md. 179, 604 A.2d 445, 458–60 (1992). Additionally, other courts have held that a co-worker's testimony identifying the defendant's product and plaintiff's proximity to that product is also enough to prove proximate cause in asbestos cases, even when the plaintiff does not remember using the defendant's product. *See In re Hawaii Fed. Asbestos Cases,* 960 F.2d 806, 817–18 (9th Cir.1992); *Rotondo v. Keene Corp.,* 956 F.2d 436, 441 (3d Cir.1992); *Eagle–Picher Indus., Inc.,* 604 A.2d at 458–60.

Here Beeman identified Keene's Monoblock as an asbestos-containing product to which he had been exposed. Beeman's experts also testified to the cumulative disease effects of exposure to asbestos. Taken together, we believe this presented a question for the jury as to whether exposure to Keene's products was *a* proximate cause of Beeman's injuries. This was sufficient evidence for a reasonable jury to conclude it was more likely than not Bee-

man inhaled asbestos fibers from Keene's asbestos-containing Monoblock, and that inhalation of those fibers was a proximate cause of his asbestos-related condition.

■ VI. *Setting aside of punitive damages against Keene.* The jury awarded Beeman $5 million in punitive damages against Keene.[3] Keene moved in its motion for directed verdict and later in its motion for judgment notwithstanding the verdict to set aside the punitive damages, asserting Beeman had not proved that Keene's or its predecessors' conduct constituted willful and wanton disregard for the rights or safety of another. The district court agreed and set aside the punitive damages in its post-trial ruling. Plaintiff Joseph Beeman cross-appeals from this ruling.

Our review of this matter is for correction of errors at law. Iowa R.App.P. 4. When reviewing a motion for judgment notwithstanding the verdict, we ask

> whether the evidence, taken in the light most favorable to the party resisting the motion, regardless [of] whether the evidence was contradicted, and taking every legitimate inference that might be fairly or reasonably deducted therefrom, showed that the movant was entitled to a directed verdict at the close of all evidence.

*Suss v. Schammel,* 375 N.W.2d 252, 255 (Iowa 1985).

■ Punitive damages are not compensatory; they are for punishment and deterrence. *Ryan v. Arneson,* 422 N.W.2d 491, 496 (Iowa 1988). Under Iowa Code section 668A.1 (1991), to receive punitive damages, plaintiff must prove by a preponderance of clear, convincing, and satisfactory evidence that the defendant's conduct amounted to a willful and wanton disregard for the rights or safety of another. The conduct must be more than merely objectionable; it must follow the standards of section 668A.1. *Coster v. Crookham,* 468 N.W.2d 802, 811 (Iowa 1991). To receive punitive damages, plaintiff must offer evidence of defendant's persistent course of conduct to show no care by defendant with disregard for the consequences. *Kellar v. Peoples Natural Gas Co.,* 352 N.W.2d 688, 693 (Iowa App.1984). Punitive damages must be related to the defendant's wrongful conduct. *Ryan,* 422 N.W.2d at 496. To evaluate whether punitive damages are so excessive that they show the jury was impassioned and prejudiced when awarding them, we consider whether the punitive damage award is reasonably related to the defendant's malicious conduct. *Id.* We agree with the trial court and conclude the evidence is insufficient as a matter of law to support punitive damages against Keene.

The record showed that Keene and its predecessors manufactured and distributed asbestos-containing thermal insulation materials for many years. Many other companies performed similar services. Asbestos was recognized as the best insulating material available, because of its heat resistance and practical indestructibility.

However, at least by the 1930s, there was a growing awareness of possible problems with asbestos use. Researchers were finding that in environments of high concentrations of asbestos fibers, such as asbestos mining and milling settings, some workers developed lung problems. Articles and case reports to this effect appeared in scientific literature. In 1938 the U.S. Health Service's Dreesen report discussed risks of asbestos to textile workers. In 1945 the Fleischer–Drinker epidemiological study reported, erroneously it turned out, that shipyard workers applying asbestos to naval vessels were not significantly at risk. Then in 1965, Dr. I.J. Selikoff's landmark epidemiological study was published, reporting that exposure to asbestos insulation was hazardous to insulation workers. After this report, Keene and other manufacturers placed warnings on their asbestos products, and acceptable dust levels ("Threshold Limit Value") were lowered. In sum, reports regarding dangers

---

**3.** Under the terms of the federal bankruptcy court reorganization plan of Johns–Manville Corporation, no punitive damages could be assessed in any case against JM. Therefore, the trial court here did not submit to the jury any punitive damage claim against JM.

of asbestos to insulators and bystanders, such as Beeman, were ambiguous before 1965.

 Even though reasonable jurors could find that the manufacturers had enough knowledge to trigger a duty to warn of the potential hazards of their products, and that such failure amounted to negligence, the real issue here is conduct. For punitive damages, a defendant's conduct must be more egregious than mere negligence; it must amount to a willful and wanton disregard for the public's rights or safety established by a preponderance of clear, convincing, and satisfactory evidence. Iowa Code § 668A.1. Beeman apparently agrees that punitive damages may not be assessed against Keene based on the general knowledge of the asbestos industry. Instead, there must be clear, convincing, and satisfactory evidence that sets Keene's conduct apart from that of other asbestos manufacturers. Merely having knowledge sufficient to initiate a duty to warn does not meet the higher standard necessary to award punitive damages.

Considering the evidence in the light most favorable to Beeman, the non-moving party, we agree with the trial court and conclude there was insufficient evidence to generate a jury question as to punitive damages against Keene Corporation. We therefore affirm the trial court's order setting aside punitive damages against Keene. We have considered the parties' other contentions regarding this issue and find them unnecessary to address or without merit.

 VII. *The claim for Beeman's lost opportunity to live out his full life expectancy.* The jury awarded Beeman $600,000 for the lost opportunity to live out his full and natural life expectancy. In ruling on defendants' post-trial motions, the trial court set aside this award upon concluding that lost opportunity to live out a full life is not a separate item of damages compensable under Iowa law and should not have been submitted to the jury.

Plaintiff Joseph Beeman cross-appeals as to this ruling. We agree with the trial court.

Beeman presented evidence that more likely than not he would die prematurely of an asbestos-related disease. He did not present evidence as to how much his life expectancy would be shortened, nor did he present evidence he would be unable to continue working as long as he would have worked without being exposed to asbestos. Beeman had not missed any work in the past, and there was no evidence he would miss any in the future. Still, Beeman urged this loss of life expectancy is itself compensable without reference to loss of earning capacity or any other generally recognized compensable damage items.

The rule allowing a plaintiff to recover for lost opportunity to live out his or her full life is generally called the English rule. *In re Joint E. & S. Dist. Asbestos Litig.,* 726 F.Supp. 426, 430 (E.D.N.Y.1989) [hereinafter *In re Asbestos Litigation*]. The federal district court there noted "[t]his element of damages has been rejected by the majority of American courts." *Id.; accord* 22 Am.Jur.2d *Damages* § 276, at 224–25 (1988); 25 C.J.S. *Damages* § 56, at 810 (1966). Apparently the only jurisdiction which has adopted the English rule is South Carolina. *See McNeill v. United States,* 519 F.Supp. 283 (D.S.C.1981); *Sox v. United States,* 187 F.Supp. 465 (E.D.S.C. 1960). However, South Carolina follows the English rule because under the South Carolina Code, the state is required to follow English common law unless otherwise specified by a relevant statute. *McNeill,* 519 F.Supp. at 289.

In *In re Asbestos Litigation,* the court followed the majority approach to compensating a tort victim for reduced life expectancy. The majority approach is to compute future loss of income based on the victim's life expectancy *without* the injury. 726 F.Supp. at 429. Under this view the victim recovers prospective earnings based on "preinjury life expectancy rather than a shortened life expectancy due to the injury." *Morrison v. State,* 516 P.2d 402, 406 (Alaska 1973).

Iowa, however, follows a different rule, which calculates loss of earning capacity based on post-injury life expectancy. *Ehl-*

*inger v. State,* 237 N.W.2d 784, 792 (Iowa 1976); *In re Asbestos Litigation,* 726 F.Supp. at 430. Under *Ehlinger,* a shortened life expectancy may be used to *reduce* damages for loss of earning capacity, future pain and suffering, and future nursing and medical expenses. 237 N.W.2d at 792.

In this case, Beeman did not request submission of diminished future earning capacity to the jury and presented no evidence to support such a request. The only request for this claimed loss was for a separate damage item, which Iowa law does not allow.

In support of his position, Beeman urges that lost opportunity to live out his full life expectancy is authorized by the Iowa medical and negligence cases of *Sanders v. Ghrist,* 421 N.W.2d 520 (Iowa 1988), and *DeBurkarte v. Louvar,* 393 N.W.2d 131 (Iowa 1986). *Sanders* and *DeBurkarte* are medical malpractice cases wherein plaintiffs sued to recover for their lost chances to survive illnesses due to their respective doctors' alleged negligence in failing to timely diagnose their cancerous conditions.

Beeman equates the lost chance of survival claim authorized in these cases with his present diminished life expectancy claim. However, these claims are not the same. Damages awarded for lost chance of survival are *not* compensation for a shortening of plaintiff's life; rather, they are compensation for the lost chance to *survive* a disease, which chance plaintiff lost due to a doctor's failure to timely diagnose a disease. *DeBurkarte,* 393 N.W.2d at 135, 137. The *DeBurkarte* and *Sanders* rationale is inapplicable here because this is not a medical malpractice case, there is no pre-existing injury affected by defendants' negligence, and other items of damage are claimed. The two claims address completely different theories of recovery. Therefore, we affirm the trial court's ruling as to this assignment.

VIII. *Disposition.* In sum, we affirm the trial court's rulings and final judgment in all respects. We have considered the parties' other contentions and find them without merit or unnecessary to discuss.

AFFIRMED.

All Justices concur except SNELL, J., joined by SCHULTZ, J., who dissent.

SNELL, Justice (dissenting).

I respectfully dissent from the majority decision against Keene Corporation.

The issues are fair trial and substantial justice. This defendant received neither.

Plaintiff, at age sixty-two, has worked continuously since 1953 doing heavy construction work. He worked throughout the trial of his own case except for minimal necessary time out to testify. He claims he was injured by Keene sometime before 1965 by working near a product manufactured by a Keene predecessor. The product called Monoblock contained no more than two percent asbestos and was malleable enough to be cut with a knife, which eliminated most dust emissions. Plaintiff's exposure to this product was approximately two weeks over thirty years ago and one week twenty-five years ago.

Plaintiff does not have cancer and has not claimed his exposure to Monoblock causes him an increased risk of cancer. He did not even testify that he has a fear of cancer, that he had read information connecting asbestos and cancer, or that any doctor had advised him of any risks of cancer. He was advised that he had asthma and pleural plaques, neither of which ever prevented his full time employment. To compensate plaintiff for these injuries, the jury awarded damages of $1,282,500 against Johns–Manville Corporation and $142,500 against Keene. Additionally, the jury decided that a punitive award of damages of $5,000,000 against Keene was appropriate.

How did this spectacular verdict occur? The answer is that the lawsuit was tried as a "dread specter of cancer" case. Evidence of asbestos being linked to cancer and Johns–Manville's knowledge of its hazard to health was poured into the case by plaintiff. Although not relevant to prove Keene had any knowledge of asbestos dan-

gers so as to trigger a duty to warn plaintiff at the time of plaintiff's exposure, Keene was blanketed by this snowstorm of evidence. Guilt by association became the prevailing wind.

Anticipating this, Keene sought at the outset to distance itself from Johns–Manville, the industry leader in culpability. It moved for a separate trial and a motion in limine regarding punitive damages. The trial court in an effort to achieve judicial economy denied the motions. What transpired thereafter showed the jury's inability to separate the evidence directed at each defendant and to fairly try the case.

A week and a half of prejudicial cancer evidence was inserted by plaintiff using claims of conspiracy and fraud by Johns–Manville as a vehicle. Plaintiff then withdrew those claims, leaving it to the court to instruct that all of this evidence was to be considered only against Johns–Manville and solely on the issue of failure to warn. Even on this issue, the evidence showed no clear connection between asbestos and lung problems prior to 1965, when Keene sold its products that are claimed to have injured plaintiff. The jury's response was a $5,000,000 punitive award against Keene, having been instructed that a bankruptcy court order prevented it from awarding punitive damages against Johns–Manville.

Fair trial was clouded from the beginning by plaintiff's counsel announcing after trial commenced, the night before plaintiff's expert witness was scheduled to testify, that plaintiff was more injured than he thought. Keene was told that it faced a claim of asbestosis rather than pleural plaques, a lesser malady. The case had been on file since October 1988. Even if this late-night switch was unintended and fortuitous, the resulting trial by ambush is no longer favored in law and prejudiced defendants.

Plaintiff also sought and received from the jury a $600,000 award based on a new theory of tort liability. The jury heard all about and agreed that defendants were liable for plaintiff's "lost opportunity to live." Although the trial court set this award aside, and the majority rejects this theory,

the compounding effect of this additional improper evidence could hardly be erased from the jury's considerations.

We have long recognized that when a party has not received a fair and impartial trial, the trial court has inherent power to set aside the verdict. *Brunssen v. Parker*, 227 Iowa 1364, 291 N.W. 535 (1940); *Bletzer v. Wilson*, 224 Iowa 884, 276 N.W. 836 (1937). This is also true when substantial justice has not been effectuated. *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632 (Iowa 1969). Another trial may be granted, even in the absence of reversible error, in the interest of justice although plaintiff was not entitled to a directed verdict. *Comer v. Burns*, 255 Iowa 251, 122 N.W.2d 305 (1963).

The trial court and majority have tried to salvage a fair result from the contagion prevailing in this case. For Keene Corporation it cannot be done. The wisdom of our court in 1855 should be followed. *Jourdan v. Reed*, 1 Iowa 135, 138, 1 Clarke 135, 138–39 (1855). It states:

Where the mind is brought irresistibly to the conclusion, that the verdict was not the result of a free, sound and unbiased exercise of judgment, on the testimony submitted, and that manifest injustice will result, if judgment is rendered upon such verdict, it would be the right and duty of the court below, to grant a new trial; and where such a case is made clearly apparent to this court, a new trial will be awarded though refused by the district court.

I would grant a new trial for Keene Corporation.

SCHULTZ, J., joins this dissent.