**IN THE COURT OF APPEALS OF IOWA**

No. 20-0656
Filed June 16, 2021

KIM CUENO and MICHAEL NEMMERS, Individually and as Co-Executors of the Estate of JEANETTE KONRARDY, KEVIN NEMMERS, Individually, JOHN NEMMERS, Individually, BRIAN NEMMERS, Individually, and TERRY NEMMERS, Individually,
    Plaintiffs-Appellants,

vs.

HEALTHCARE OF IOWA, INC. and RIVERVIEW DEVELOPMENT CORPORATION, d/b/a MILL VALLEY CARE CENTER,
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Jackson County, Patrick McElyea, Judge.

Plaintiffs appeal the district court decision granting summary judgment to Healthcare of Iowa, Inc., granting judgment notwithstanding the verdict to eliminate punitive damages, and denying its request for certain jury instructions. **AFFIRMED.**

Pressley Henningsen and Benjamin P. Long of RSH Legal, P.C., Cedar Rapids, for appellants.

Kimbley A. Kearney of Clausen Miller, P.C., Chicago, W. Patrick Sullivan of Siesennop & Sullivan, Milwaukee, and Holly M. Logan of Dentons Davis Brown, P.C., Des Moines, for appellee Riverview Development Corp., d/b/a/ Mill Valley Care Center.

Joseph D. Thornton of Smith Peterson Law Firm, LLP, Council Bluffs, for appellee Healthcare of Iowa, Inc.


Heard by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Plaintiffs appeal the district court decision granting summary judgment to Healthcare of Iowa, Inc. (HCI), denying its request for certain jury instructions, and granting judgment notwithstanding the verdict to eliminate punitive damages in the judgment against Riverview Development Corp., doing business as Mill Valley Care Center (Mill Valley). We affirm the district court's decision on all of the issues raised by plaintiffs on appeal.

### I.    Background Facts & Proceedings

Jeanette Konrardy became a resident at Mill Valley on August 11, 2012, when she was eighty years old. Throughout her time in the facility she had a risk of falling. Konrardy had a stroke in July 2013, which increased her risk of falling. Mill Valley had a care plan for Konrardy. The care plan required a person to assist Konrardy on and off the toilet but did not require supervision while she was using the toilet. There was a care sign in Konrardy's room that designated the level of care she was to receive.

A certified nursing assistant (CNA), Megan Massey, testified that she often took Konrardy to the toilet in the morning and left her there while she went into Konrardy's adjoining room to put away her slipper socks. On January 19, 2016, Konrardy fell from the toilet, hitting her head. Konrardy died on January 24 as a result of injuries sustained from falling in the bathroom.

On May 11, 2017, Konrardy's estate and her children (the plaintiffs) filed an action against Mill Valley and HCI alleging they were negligent in their care of Konrardy, requesting compensatory and punitive damages. HCI had a consulting

agreement to assist Mill Valley in remaining compliant with regulations so it would continue to receive Medicare payments.

HCI filed a motion for summary judgment. It claimed it did not have an ownership interest in Riverview Development or Mill Valley and had no responsibility for the care of Konrardy. The plaintiffs resisted the motion. The district court granted the motion for summary judgment. The court found, "It is undisputed that Healthcare of Iowa, Inc. is not an owner of Mill Valley Care Center or Riverview Development Corporation. It is undisputed Healthcare of Iowa, Inc., does not train or supervise Mill Valley Care Center's nurses." The court also found, "Healthcare of Iowa only provided regulatory compliance and some budget supervision to Mill Valley. Based on the facts as submitted, the Court finds there is no legal basis for the defendant Healthcare of Iowa, Inc., to be held legally responsible for the injuries or death of the Decedent."

Prior to trial against Mill Valley, the plaintiffs requested jury instructions pertaining to state and federal regulations for the operation of nursing homes.[1] The

---

[1] Proposed instruction No. 700.10 provided:

Certain State and Federal codes are designed to protect the residents at care facilities such as those at Mill Valley Care Center. Jeanette Konrardy was a member of that class these laws and regulations were designed to protect.

Iowa Administrative Code requires that a nursing home may not admit or retain a resident who is in need of greater services than the facility can provide. Iowa Admin. Code § 481-58.12(1)(a).

Iowa Administrative Code requires that a nursing home maintain, and regularly update, a written individual healthcare plan, available to all staff, based on resident treatment decisions, the nature of the illness or disability, treatment, and care prescribed, including goals developed by each discipline providing services, treatment, or care. Iowa Admin. Code § 481-58.18(1).

Federal Regulations require that each resident must receive and the facility must provide the necessary care and services to

attain or maintain the highest practicable physical, mental, and psychosocial well-being, consistent with the resident's comprehensive assessment and plan of care. 42 C.F.R. § 483.24.

Federal Regulations require a facility must have sufficient nursing staff with the appropriate competencies and skills sets to provide nursing and related services to assure resident safety and attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care and considering the number, acuity and diagnoses of the facility's resident population in accordance with the facility assessment. 42 C.F.R. § 483.70(e)

Iowa Administrative Code requires that the health service supervisor (generally the "Director of Nursing") initiate preventative and restorative nursing procedures for each resident so as to achieve and maintain the highest possible degree of function, self-care, and independence based on resident choice, where practicable. Iowa Admin. Code § 481-58.20(5).

Federal Regulations require the facility must conduct initially and periodically a comprehensive, accurate, standardized, reproducible assessment of each resident's functional capacity. 42 C.F.R. § 483.20.

Federal Regulations require that nursing homes must keep medical records that are complete, accurately documented, readily accessible, and systematically organized. 42 C.F.R. § 483.70.

Iowa Administrative Code requires that written care plans must be interdisciplinary, current, revised as necessary and available for review. Iowa Admin. Code § 481-58.18(1).

Federal Regulations require facilities must provide services by sufficient numbers of personnel on a 24-hour basis to provide nursing care to all residents in accordance with resident care plans. 42 C.F.R. § 483.35.

Iowa Administrative Code requires a nursing home to have one licensed administrator who is in charge and responsible for the overall operation of the nursing facility. Iowa Admin. Code §§ 481-58.9(1); 481-58.8(1).

Federal Regulations require nursing homes ensure "[t]he resident environment remains as free of accident hazards as is possible" and that "each resident receives adequate supervision and assistance devices to prevent accidents." 42 C.F.R.483.25(d).

Federal Regulations require nursing homes provide care to prevent the development of pressure ulcers, treat existing ulcers and prevent infection. 42C.F.R. 483.25(b).

Federal Regulations require nursing homes to provide a dignified existence, self-determination . . . and a facility must treat each resident with respect and dignity and care for each resident in a manner and in an environment that promotes maintenance or

district court denied the request to submit these instructions to the jury. The court ruled:

> However, these regulations are not negligence per se, and the Court finds that if these regulations were given especially in conjunction with a theory of negligence being that Mill Valley failed to abide by all relevant State and Federal regulations, that that would amount to instructing the jury that it's negligence per se and that that would be inappropriate.

The court stated it would give a different instruction "which indicates that violations of the regulations are relevant but are not conclusive proof of negligence."

After a trial at which both sides presented expert testimony, the jury found Mill Valley was negligent. The plaintiffs were awarded $800,000 in compensatory damages and $1.37 million in punitive damages. Mill Valley filed a motion for judgment notwithstanding the verdict on the issue of punitive damages. The court found:

> In reviewing this case, the Court does not find the necessary intentional act, or willful and wanton conduct, which exacerbated the negligence of Mill Valley. The Court upholding the punitive damages award would blur the lines between negligence and willful and wanton conduct to the point that there would be no distinction. In sum, the Court finds that the jury's award of punitive damages to the Plaintiffs should be rescinded because the Plaintiffs did not prove at

---

enhancement of his or her quality of life, recognizing each resident's individuality. 42 C.F.R. 483.10

Iowa Administrative Code requires that a resident shall be treated with consideration, respect, and full recognition of dignity and individuality, including privacy in treatment and in care for personal needs." Iowa Admin. Code § 481-58.45.
Also, proposed instruction No. 700.11 provided:

You have received evidence of applicable safety customs and code provisions. Conformity with the provisions of a custom or safety code is evidence that Defendant was not negligent and violations of its provision is evidence that Defendant was negligent. Such evidence is relevant and you should consider it, but it is not conclusive proof.

trial that Mill Valley's negligent care of Ms. Konrardy met the willful and wanton requirement for punitive damages.

The court rescinded the judgment of $1.37 million in punitive damages. Plaintiffs appeal the district court's decision.

## II.      Summary Judgment

The plaintiffs claim the district court erred in granting summary judgment to HCI. We review a district court's decision granting summary judgment for the correction of errors of law. *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139 (Iowa 2013). The Iowa Supreme Court has stated:

> A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the record reveals a conflict only concerns the legal consequences of undisputed facts. When reviewing a court's decision to grant summary judgment, we examine the record in the light most favorable to the nonmoving party and we draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact.

*Id.* at 139–40 (quoting *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96–97 (Iowa 2012)). "Even if the facts are undisputed, summary judgment is not proper if reasonable minds could draw different inferences from them and thereby reach different conclusions." *Morris v. Steffes Group, Inc.*, 924 N.W.2d 491, 496 (Iowa 2019) (citation omitted). The party seeking summary judgment has the burden to show there are no genuine issues of material fact and the party is entitled to a judgment as a matter of law. *Id.*

**A.**      The plaintiffs assert there was a genuine issue of material fact concerning whether HCI had an ownership interest in Mill Valley. The plaintiffs'

claims are based on an entry on the Medicare.gov website, which reflected HCI had a twenty percent ownership interest in Mill Valley, and David Chensvold, the president of HCI, had a ten percent interest. HCI, David, and Donald Chensvold[2] were also listed under Operational/Managerial Control. This information was retrieved on December 14, 2018. When the Medicare.gov website was viewed on September 26, 2019, it did not show any ownership interest by HCI or David, and instead, they were only listed under Operational/Managerial Control.

Michael Jenkins, an attorney, submitted an affidavit stating the Medicare website contained a historical error that incorrectly listed Donald, David, and HCI as owners of Mill Valley.[3] Jenkins stated that he submitted new paperwork, which was accepted by Medicare on March 4, 2019, to show the corrected ownership of Mill Valley. Also, Robert Dempewolf, the president of Mill Valley, submitted an affidavit stating that Donald, David, and HCI never had any ownership interest in Mill Valley. In a deposition, Thomas Wagg, a vice-president of HCI, testified HCI was not an owner or shareholder in any other businesses.

In a negligence claim, plaintiffs must show (1) the existence of a duty, (2) a failure to perform that duty, (3) proximate cause, and (4) damages. *Bockelman v. Iowa Dep't of Transp.*, 366 N.W.2d 550, 552 (Iowa 1985). "Although claims of negligence are seldom capable of summary adjudication, the threshold determination of whether the defendant owes the plaintiff a duty of care is always

---

[2] Donald is the previous president of HCI and the father of David. Donald has retired and is no longer involved in HCI.

[3] Jenkins stated a former employee of HCI had incorrectly filed information concerning ownership because the employee "did not understand the prompts related to ownership."

a legal question for the court." *Robinson v. Poured Walls of Iowa, Inc.*, 553 N.W.2d 873, 875 (Iowa 1996). Where the defendant does not owe a duty to the plaintiffs, summary judgment is appropriate. *Van Essen v. McCormick Enters. Co.*, 599 N.W.2d 716, 721 (Iowa 1999); *see also Estate of Fields v. Shaw*, 954 N.W.2d 451, 455 (Iowa Ct. App. 2020) (finding summary judgment appropriate when defendant maintained no control over another business, and therefore owed no duty to plaintiffs).

The district court found, "It is undisputed that Healthcare of Iowa, Inc. is not an owner of Mill Valley Care Center or Riverview Development Corporation." The court concluded HCI did not owe a duty to plaintiffs and it should not be held legally responsible for Konrardy's injuries. An erroneous entry on a form, standing alone, does not show ownership. We find no error in the district court's conclusion.

**B.** The plaintiffs also assert there is a genuine issue of material fact regarding HCI's level of management, operation, and control over Mill Valley. They claim HCI owed a duty to Konrardy because it provided services necessary for the protection of the patients, such as requiring Mill Valley to follow government regulations. The plaintiffs contend HCI had control of the day-to-day operations of Mill Valley.

On April 1, 2013, HCI and Mill Valley entered into a "Consulting Agreement," which listed the services to be provided by HCI, including developing a budget, assistance with long-range planning, and assistance and advice regarding government regulations. The agreement stated,

> All employees of the nursing home are in the employ of the owner
> and not the Consultant, and the Consultant is in no way liable to the

Owner or others for any act or omission on the part of any employee, whether due to negligence of the employee or otherwise.

HCI was paid for its services to Mill Valley.

The district court determined, "It is undisputed Healthcare of Iowa, Inc., does not train or supervise Mill Valley Care Center's nurses." The extent of HCI's involvement in the operations of Mill Valley is set out in the "Consulting Agreement." HCI was not involved in the day-to-day care of the patients. There was no evidence to show HCI was involved in the assessment of Konrardy that determined she could be left on the toilet alone or the actions of the CNA who followed that assessment. In general, liability follows control. *See McCormick v. Nikkel & Assocs., Inc.*, 819 N.W.2d 358, 374 (Iowa 2012). We conclude the district court did not err in finding HCI did not have control over Mill Valley so that it should be liable for the actions of Mill Valley's employees.

**C.** Finally, the plaintiffs assert there is a genuine issue of material fact in relation to HCI's role in the causation of Konrardy's death. They claim Mill Valley was negligent by (1) having an incomplete assessment of Konrardy, (2) not having adequate staffing for the facility, and (3) not adequately training staff. The plaintiffs contend HCI was involved in the decision-making process that led to these problems and so it should also be liable.

The district court found,

[HCI] provided to no services to [Konrardy], express or implied under Iowa Law.
    Healthcare of Iowa only provided regulatory compliance and some budget supervision to Mill Valley. Based on the facts as submitted, the Court finds there is no legal basis for the defendant Healthcare of Iowa, Inc., to be held legally responsible for the injuries or death of the Decedent.

We conclude the district court did not err in concluding HCI did not owe a duty of care to Konrardy. The plaintiffs' vague statement that HCI *might* have been involved in decisions that ultimately affected Konrardy does not generate a genuine issue of material fact.

**D.**     Considering all of the issues raised by plaintiffs, we conclude the district court did not err in granting summary judgment to HCI. "An issue is 'genuine' if the evidence in the record 'is such that a reasonable jury could return a verdict for the nonmoving party.'" *Honomichl v. Valley View Swine, LLC*, 914 N.W.2d 223, 230 (Iowa 2018) (citation omitted). Plaintiffs did not show a genuine issue of material fact to support their claim that HCI had an ownership interest in Mill Valley, that it managed or controlled the employees in the company, or that HCI engaged in negligent acts that led to Konrardy's death. We affirm the district court's grant of summary judgment to HCI.

### III.     Jury Instructions

The plaintiffs claim the district court should have provided their proposed instructions to the jury. They state the instructions accurately set out the applicable law, and the subject is not covered in the other instructions. The plaintiffs contend the court should have instructed the jury on safety standards applicable to nursing homes. They assert Mill Valley's failure to abide by the regulatory standards was evidence of negligence. They also state that they were prejudiced by the court's failure to give these instructions.

"Our standard of review for jury instructions is whether prejudicial error by the trial court has occurred." *Thavenet v. Davis*, 589 N.W.2d 233, 236 (Iowa 1999). The jury found Mill Valley was negligent and awarded plaintiffs $800,000 in

compensatory damages. "This court has consistently held that errors against a party are cured by a verdict in that party's favor unless the error was prejudicial with respect to the amount of recovery." *Brant v. Bockholt*, 532 N.W.2d 801, 803 (Iowa 1995).

The proposed jury instructions go to the issue of negligence, not the amount of recovery. We conclude plaintiffs were not prejudiced by the district court's decision denying their request to submit the proposed instructions. Any error by the court was remedied by the favorable verdict for plaintiffs. *See id.*; *Morrison on Behalf of Estate of Morrison v. Grundy Cnty. Rural Elec. Coop.*, No. 17-1001, 2019 WL 320178, at *4 (Iowa Ct. App. Jan. 23, 2019).

At oral arguments, the plaintiffs urged the proposed jury instruction would bolster the punitive damage record if the jury had been allowed to consider it. But even without the instruction, the jury awarded a significant punitive damage award; thus, it is difficult to see how the failure to submit the instruction prejudiced the plaintiffs with respect to the amount of recovery for those damages. *See Brant*, 532 N.W.2d at 803. Here, we also find plaintiffs were not prejudiced on their claim for punitive damages by the district court's ruling on the issue of the proposed jury instructions. The jury awarded plaintiffs punitive damages and we find they were not prejudiced by the decision to deny their request for instructions on nursing home regulations.[4] Again, any error was remedied by the favorable jury verdict for plaintiffs. *See id.*

---

[4] Although we determine the district court properly granted Mill Valley's motion for judgment notwithstanding the verdict on the issue of punitive damages, the jury instructions were not a reason for the court's decision to grant the motion. We conclude plaintiffs were not prejudiced by the instructions given to the jury because

## V.      Judgment Notwithstanding the Verdict

The jury awarded plaintiffs $800,000 as compensatory damages based on Mill Valley's negligence.  This verdict is not challenged on appeal.  The jury additionally determined Mill Valley should pay $1.37 million in punitive damages based on a finding Mill Valley's conduct "constituted willful and wanton disregard for the rights or safety of Jeanette Konrardy."  The jury found Mill Valley's conduct was directed specifically at Konrardy.

Mill Valley filed a motion for judgment notwithstanding the verdict, challenging the award of punitive damages.  It claimed there was not clear and convincing evidence in the record to support a finding that it had a willful and wanton disregard for Konrardy's rights or safety, or that its conduct was specifically directed at her.

We review a district court's ruling on a motion for judgment notwithstanding the verdict for the correction of errors at law.  *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010).  A motion for judgment notwithstanding the verdict may be granted if there is not sufficient evidence to support each element of the plaintiffs' claims.  *Seastrom v. Farm Bureau Life Ins. Co.*, 601 N.W.2d 339, 347 (Iowa 1999).  "We view the evidence in the light most favorable to the party against whom the motion was made, taking into consideration every legitimate inference that may fairly and reasonably be made."  *Willey v. Riley*, 541 N.W.2d 521, 526 (Iowa 1995).

---

the jury awarded the plaintiffs punitive damages.  In a separate issue, we determine the award of punitive damages is not warranted under the law.

Plaintiffs assert that we should review the evidence de novo, citing *Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998). In *Schlegel*, the Iowa Supreme Court states:

> When the district court considers a motion for [judgment notwithstanding the verdict], it must view the evidence in the light most favorable to the party against whom the motion is made. The district court follows these same principles on a motion for directed verdict. On our review, we consider the evidence in the same way, asking whether there was sufficient evidence to generate a jury question.

585 N.W.2d at 221 (citations omitted). The court is not stating that we should review the evidence de novo. *See id.* In stating that we should "consider the evidence in the same way," the court is stating that we "must view the evidence in the light most favorable to the party against whom the motion is made." *See id.*; *see also Kellogg v. Rhodes*, 4 N.W.2d 412, 416 (Iowa 1942) (stating that in considering a motion for judgment notwithstanding the verdict, "[w]e are not permitted to review the evidence de novo and decide the case we think proper").

Punitive damages may be awarded if a jury finds (1) "by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another," and (2) "the conduct of the defendant was directed specifically at the claimant, or at the person from which the claimant's claim is derived." Iowa Code § 668A.1(1), (2) (2017).

"Punitive damages are not compensatory; they are for punishment and deterrence." *Beeman v. Manville Corp. Asbestos Disease Comp. Fund*, 496 N.W.2d 247, 255 (Iowa 1993). Section 668A.1 "requires proof, by a preponderance of clear, convincing, and satisfactory evidence, that the

defendant's conduct amounted to a willful and wanton disregard for the rights or safety of another." *Seastrom*, 601 N.W.2d at 347. "Punitive damages must be related to the defendant's wrongful conduct." *Beeman*, 496 N.W.2d at 255.

Punitive damages are not awarded for merely objectionable or negligent conduct. *Kinseth v. Weil-McLean*, 913 N.W.2d 55, 79 (Iowa 2018). The Iowa Supreme Court has stated:

> Punitive damages are only appropriate when a tort is committed with "either actual or legal malice." "Actual malice may be shown by such things as personal spite, hatred, or ill-will and legal malice may be shown by wrongful conduct committed with a willful or reckless disregard for the rights of another."

*Wolf v. Wolf*, 690 N.W.2d 887, 893 (Iowa 2005) (citations omitted). "To receive punitive damages, plaintiff must offer evidence of defendant's persistent course of conduct to show no care by defendant with disregard for the consequences." *Beeman*, 496 N.W.2d at 255.

In assessing the award of punitive damages, the district court reviewed four areas: (1) the assessments of Konrardy by Mill Valley; (2) the fall on January 19, 2016; (3) Mill Valley's documentation of the incident; and (4) evidence of falls by other patients at Mill Valley. The court also reviewed expert testimony on these issues. The court concluded that Mill Valley's conduct was merely objectionable and negligent. The court found Mill Valley did not engage in willful and wanton conduct that would support an award of punitive damages. The court granted Mill Valley's motion for judgment notwithstanding the verdict and rescinded the award of punitive damages.

We find the district court did not err in its conclusion the plaintiffs failed to present sufficient evidence to show Mill Valley engaged in willful and wanton

conduct. The plaintiffs did not present any evidence of actual malice, which would be shown by "personal spite, hatred, or ill-will" *See Wolf*, 690 N.W.2d at 893. Additionally, they did not present evidence that the conduct that was the basis for the negligence claim was committed with a willful or reckless disregard for the rights of another. *See id.* For an award of punitive damages, the plaintiffs would need to show Mill Valley engaged in a persistent course of conduct in regard to Konrardy with a disregard of the consequences of their actions. *See Beeman*, 496 N.W.2d at 255.

The evidence showed a nurse employed by Mill Valley assessed Konrardy and determined she needed assistance getting on and off the toilet but did not designate that she needed assistance while on the toilet. There was no evidence Konrardy had fallen while using the toilet in the past. The CNA followed the assessment while caring for Konrardy on the day she fell. The plaintiffs did not show Mill Valley intentionally concealed information by changing documentation, as there was also evidence to show the changes were due to updates in information. The evidence of falls at Mill Valley by other people, one four and one-half years earlier and one eleven months later, do not show Mill Valley persistently ignored the safety of the patients at the facility. There was evidence from experts that falls were a common occurrence at nursing homes.

While Mill Valley's conduct may constitute negligence, as the jury found, there is no evidence Mill Valley engaged in a persistent course of conduct that showed a disregard of the consequences of the assessment. *See id.* We do not infer recklessness from every negligent act. *Miranda v. Said*, 836 N.W.2d 8, 34

(Iowa 2013).  We conclude the district court properly granted Mill Valley's motion for judgment notwithstanding the verdict on the issue of punitive damages.

We affirm the decision of the district court.

**AFFIRMED.**